Katherine **FISHER**, D.O., Plaintiff,

v.

Otis **BOWEN**, Secretary of United States Department of Health and Human Services; Edward Martin, Director of Bureau of Health Care Delivery and Assistance; Kenneth Moritsugu, Chief, National Health Service Corps; Abbie Chandler and Kenneth Bahm, Regional Program Consultants, National Health Service Corps; Department of Health and Human Services, an agency of the United States of America; and the United States of America, Defendants.

**Civ. No. 87–98–FR.**

United States District Court,
D. Oregon.

May 4, 1987.

Jonathan M. Hoffman, Martin, Bischoff, Templeton, Biggs & Ericsson, Portland, Or., for plaintiff.

Charles H. Turner, U.S. Atty., Jack G. Collins, Asst. U.S. Atty., Portland, Or., for defendants.

FRYE, Judge:

The matters before the court are the cross-motions for summary judgment filed by the plaintiff and the defendants.

Plaintiff, Katherine Fisher, filed this action against the federal defendants for mandamus and injunctive relief under 28 U.S.C. § 1361 seeking to require defendants to perform their duties under the Public Health Service Act, 42 U.S.C. §§ 254 *et seq.*, and to declare the parties' rights and obligations under a National Health Service Corps (the Corps) contract, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

## BACKGROUND

Fisher, a Doctor of Osteopathy, received scholarship funds under the National Health Service Corps Scholarship Program, (NHSC scholarship program), 42 U.S.C. § 294t *et seq.*, to finance her medical education during the 1979–80, 1980–81 and 1981–82 school years. Fisher declined assistance for the 1982–83 school year. In return for these scholarship funds, Fisher signed a contract with defendant Secretary of Health, Education and Welfare (now Health and Human Services) which provides that she is obligated to serve one year for each year the scholarship award is provided, with a minimum obligation of two years in a Health Manpower Shortage Area (HMSA) designated under 42 U.S.C. § 254e upon the completion of her medical training.

The NHSC scholarship program was established by Congress as a part of a comprehensive legislative effort to rectify the shortage of health resources in the area of primary health care services for urban and rural medically underserved populations in the United States. See House Report 94–266, 94th Cong. 1st Sess., p. 22 (1975); Senate Report 94–887, 94th Cong. 1st Sess., pp. 48–54 (1975), U.S. Code Cong. & Admin. News 1976, 4947, 4964. The terms of the written contract signed by each medical student in the NHSC scholarship program are established by statute, 42 U.S.C. § 254f. The scholarship contract signed by Fisher provides that in return for scholarship assistance, Fisher agrees upon completion of her medical education to:

serve in the full-time clinical practice of ... her profession (a) as a commissioned

officer in the Regular or Reserve Corp of the Public Health Service or as a civilian member of the Corp in a health manpower shortage area designated under Section 332 of the Public Health Service Act to which [she] is assigned ...

National Health Service Corp Scholarship Program Contract, Exhibit A to Plaintiff's Complaint.

Upon entering her final year of residency in July, 1986, Fisher entered the "1986–87 placement cycle." Fisher was provided with a list of approved HMSA sites in Region X and asked to match to a site in which to discharge her obligation. Fisher asserts that the defendants have frustrated her attempt to match to an HMSA site. She filed this action seeking an order from the court directing the defendants as follows:

1. To approve a site at which she can engage in the full-time clinical practice of her profession as an internist, as a federal employee, in the state of Oregon; or

2. To enter into a private practice option agreement with her which will permit her to serve her obligation at an HMSA of her choice within the state of Oregon; or

3. To promulgate rules pursuant to the Administrative Procedure Act governing the items specified in paragraph XVII of the complaint and to enjoin defendants from declaring her in default of her obligation until she has an opportunity to obtain placement in accordance with such rules; or

4. To rescind the contract; or

5. To declare that by reason of defendants' failure to perform their obligations under the contract, she has no further obligation to perform thereunder.

## ANALYSIS

■ The government initially contends that jurisdiction in this case rests solely with the Court of Claims. 28 U.S.C. §§ 1346(a)(2), 1491. However, Fisher asks the court to declare her rights and obligations under a program that the government contends and this court agrees involves federal statutory rights. While the relationship between the parties is evidenced by a contract, the primary relationship between the parties is a statutory one based on federal law. As such, Fisher is entitled to the benefit of the limited waiver of the sovereign immunity of the United States provided under the Administrative Procedure Act.[1] 5 U.S.C. § 702. This court has jurisdiction under 28 U.S.C. § 1361.

Fisher initially asserts that the contract between her and the government gives her the right to serve her obligation as a federal employee in the state of Oregon. Fisher argues that the contract as well as the informational brochures provided to her by the NHSC scholarship program state that she will be employed as a full-time practitioner, either as a commissioned officer of the Public Health Service or as a federal civil service apppointee, whichever she chooses. Fisher asserts that the NHSC scholarship program by way of these informational brochures represented that she would be allowed flexibility in choosing a location in which to discharge her obligation, and that if she married, the NHSC scholarship program would use its best efforts to approve sites which would enable her to continue to live with her spouse. Fisher explains that her spouse maintains a business in Portland, Oregon, and that if she is placed a substantial distance from Portland, Oregon, it will require her spouse to lose his business or in the alternative will require them to live apart.

---

1. The rights and obligations of the parties in this case have a a statutory and not a contractual foundation. *Aiken v. United States,* 4 Cl.Ct. 685, 692 (1984). The application for and the award of assistance are implementing tools of Pub.L. No. 92–585. Pub.L. No. 92–585 was not intended to create private contractual or vested rights, but intended to declare a policy to be pursued until Congress ordained otherwise. *Id.*

at 692. As such, Congress was legally free to alter, amend or repeal Pub.L. No. 92–585 even if Fisher would be deprived of some future benefit as a result of the action and even if Fisher had taken some action in reliance upon prior law. Since the relationship between the parties is statutory in nature, the provisions of the existing statute, including the 1981 amendments to the program, apply to Fisher.

Fisher contends that the defendants have failed to fulfill their obligation to her in that they did not provide her with an option of any federal positions in the state of Oregon in the initial placement phase which ended April 15, 1987. Fisher asks this court to order the defendants to provide her with a suitable position as a federal employee within the state of Oregon where she can fulfill her obligation to the NHSC scholarship program.

■ Neither the contract between Fisher and the government nor the statutory scheme underlying the contract guarantees Fisher a federal position at any particular site. To the contrary, Fisher agreed in the contract to serve in a site "as the Secretary may determine." Fisher's claim that the defendants must provide her with a federal hire in the state of Oregon because of informational brochures must fail.

■ In the alternative, Fisher asserts that the defendants are compelled to approve the private placement option that she has proposed in Estacada, Oregon to fulfill her obligated service. Fisher relies upon 42 U.S.C. § 254n in support of her claim that the statutory scheme requires the Secretary to approve her proposed private placement in the Estacada HMSA.

42 U.S.C. § 254n provides in relevant part:

(a) The Secretary shall, to the extent permitted by, and consistent with, the requirements of applicable State law, release an individual from all or part of his service obligation under section 254m(a) of this title or under section 234 of this title (as in effect on September 30, 1977) if the individual applies for such a release under this section and enters into a written agreement with the Secretary under which the individual agrees to engage for a period equal to the remaining period of his service obligation in the full-time private clinical practice (including service as a salaried employee in an entity directly providing health services) of his health profession—

\*　　\*　　\*　　\*　　\*　　\*

(2) ... in a health manpower shortage area (designated under section 254e of this title).

The defendants argue that the statutory scheme does not give Fisher an absolute right to exercise the private placement option in the HMSA of her choice. The defendants assert that the Secretary maintains the discretion under the statutory scheme to accept or reject Fisher's proposed private placement option.

The statutory scheme provides two ways for Fisher to meet her service obligation. The first is termed "obligation service under contract" and is contained in 42 U.S.C. § 254m which requires her to serve as a "member of the Corps" subject to assignment by the Secretary to certain approved sites. As an alternative, Fisher may meet her service obligation as provided in section 254n in a private placement where she is employed by a privately funded and operated clinical practice in a HMSA.

From 1976 to 1981, the statute did not provide a scholarship recipient with an absolute right to exercise the private placement option in the HMSA of his/her choice. From 1976 to 1981, the statute expressly required the Secretary to determine the financial sufficiency of the HMSA for a private placement practice and limited the exercise of the private placement option to HMSA's of greatest manpower shortage. In 1981, Congress amended the private placement option provisions to remove the requirement that scholarship recipients serve only in the highest priority HMSAs. Section 254n currently provides that "the Secretary shall ... release an individual from all or part of his service obligation ... if the individual applies for such a release ... and enters into a written agreement with the Secretary ... to engage for a period equal to the remaining period of his service obligation in the full-time private clinical practice ... of his profession ... in a health manpower shortage area (designated under section 254e of this title)." 42 U.S.C. § 254n. The subsequent regulation relevant to the private placement option states:

The Secretary will release a participant from all or part of the service obligation if the participant applies for a release under Section 753 of the Act [currently codified at 42 U.S.C. § 254n] and agrees in writing to engage for a period equal to the remaining period of the participant's service obligation in the full-time clinical practice of the participant's health profession, under the requirements of Section 753 of the Act.

42 C.F.R. § 62.8(g).

The Secretary asserts that he maintains the discretion under section 254n to approve the private placement of Fisher and others similarly situated in the HMSA of his/her choosing. In support of his position, the Secretary points to the conference report of the 1981 Congress stating:

In an effort to strengthen the private placement option, the conference substitute allows the Secretary more flexibility in encouraging individuals to serve, at their financial risk, in underserved areas during the obligated period. H.R.Conf. Rep. No. 208, 97th Cong., 1st Sess. 784, reprinted in 1981 U.S. Code Cong. & Ad. News 396, 1010, 1146.

The Secretary asserts that the duties of the Secretary regarding approval of the private placement option are clearly discretionary and that Fisher has no role in choosing such assignment.

Fisher asserts that those who choose the private placement option under the current statutory scheme are not subject to the assignment provisions of section 254f and are exempt from assignment by virtue of their agreement to a privately funded and operated clinical practice in a HMSA. Fisher points out that this flexibility is intended to encourage recipients to select as their private placement service sites those sites that they might consider making permanent practice locations thereby providing a long-term solution to the maldistribution of health manpower. Fisher points to the plain language of section 254n in support of her position that the current statutory scheme allows her to set up a private placement in an HMSA and that the Secretary is required to release her from her obligation

to serve as a "member of the Corps" under section 254m.

Further, Fisher points to another section of the conference committee report relied upon by the defendants which Fisher asserts shows that the Congress recognized that the Secretary would not retain the power to limit the private placement option to the highest priority HMSA's. The conference committee report specifically states:

The Conferees are aware that, to some extent, the success of the private practice option depends on easing the placement strategy of serving priority one and two HMSAs. As long as the emphasis for placing the salaried members of NHSC remains on these priority areas, it is acceptable to the Conferees that a more broad-based range of HMSAs receive individuals under the private practice option.

1981 U.S. Code Cong. & Ad.News 1010, 1146.

The expansion and liberalization of the private placement provisions in the 1981 amendments were a specific response by Congress to budgetary restrictions which reduced the number of federally-funded opportunities in the NHSC. The NHSC expanded the use of the private placement alternatives and sought to identify privately-funded positions and positions with sufficient financial base to support a fee-for-service practice to replace the decreasing number of costly federal hires.

While section 254n provides that the Secretary shall release an individual where the individual applies for a release and enters into a written agreement with the Secretary to engage in private clinical practice in a health manpower shortage area, the statute is silent as to the Secretary's obligation to enter into such a written agreement as to any proposal made by the scholarship recipient. In light of the prior statutory scheme and the nature of the program, this court will not infer such an obligation on the part of the Secretary.

The court concludes that it was the intent of Congress in enacting section 254n to relieve the Secretary of the prior restric-

tions on private placement options to HMSAs of the highest priorities; that Congress intended to expand and encourage the use of private placement options and acknowledged that the use of private placement options would drain certain health care providers from high priority shortage areas unable to support private placements; and that there is no indication that Congress intended to deprive the Secretary of his role in the assignment of obligated scholars by allowing scholarship recipients absolute discretion in determining their assignments.

■ Finally, Fisher asks this court to order the defendants to promulgate regulations under the Administrative Procedure Act to do the following: 1) to select and approve HMSA sites for placement of obligated NHSC scholars; 2) to establish medically recognized criteria for placement of NHSC scholars consistent with their area of specialization and to ensure the delivery of medical care within the obligor's area of competence; and 3) to adjudicate and resolve disputes over placement before declaring obligors in default.

There are published standards that form the criteria for placement of scholars. See 42 C.F.R. § 23.6. To the extent that Fisher seeks rules of agency procedure that dictate the process for applying the HMSA designations in a given year to a specific applicant pool, the matters are committed to the discretion of the Secretary.

## CONCLUSION

The court finds that Fisher is not entitled to a federal position as a matter of law and is not entitled to exercise a private placement option in the HMSA of her choosing under section 254n. The court will not order the Secretary to promulgate further administrative rules under the program. There are no grounds presented for rescission or other relief from Fisher's obligation under the NHSC program. As such, the court concludes that summary judgment in favor of the defendants is appropriate.

Defendants' motion for summary judgment is granted, and plaintiff's motion for summary judgment is denied.