UNITED STATES of America,
Plaintiff–Appellee,

v.

Dr. Kristine M. DUFFY,
Defendant–Appellant.

No. 88–1624.

United States Court of Appeals,
Sixth Circuit.

Argued April 10, 1989.

Decided June 29, 1989.

Patricia Blake, Office of U.S. Atty., Detroit, Mich., Karl R. Overman (argued), for plaintiff-appellee.

Amy L. Pope, Nancy L. Hutcheson (argued), Hill, Lewis, Adams, Goodrich & Tait, David G. Chardavoyne, Bodman, Long & Dahling, Detroit, Mich., for defendant-appellant.

Before KEITH and KENNEDY, Circuit Judges, and McQUADE *, District Judge.

McQUADE, District Judge.

Defendant-appellant, Dr. Kristine M. Duffy, appeals from the district court's grant of summary judgment in favor of

---

* The Honorable Richard B. McQuade, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

plaintiff-appellee, the United States of America. Dr. Duffy contends that the district court erred in finding that she was liable for breach of her scholarship contract with the government, and that the district court erred in assessing damages. We reject Dr. Duffy's contentions and affirm the district court's decision.

### I.

Recognizing that "[t]he geographic maldistribution of health manpower represents one of the most serious barriers to access to quality health care in this nation today," H.Rep. No. 266, 94th Cong., 2d Sess. 22, *reprinted in* 1976 U.S.Code Cong. & Admin.News 4947, 4964, Congress enacted the National Health Service Corps ["NHSC"] Scholarship Program, Pub.L. No. 94–484, 90 Stat. 2281 (codified as amended at 42 U.S.C. § 254*l*). An eligible student in a qualified professional health degree program receives a scholarship to cover educational expenses and a stipend for living expenses. In exchange, the student agrees to serve in a designated health manpower shortage area ["HMSA"] for the same number of years as she received scholarships, or two years, whichever is greater. There are three ways for a recipient to perform her service obligation: (1) as a member of the NHSC who is a commissioned officer or who is a civilian employee of the United States, 42 U.S.C. § 254m(b)(1)(A); (2) as a civilian employee of the NHSC, *id.* § 254m(b)(1)(B); or (3) through the "private practice option," *id.* § 254n.

A student who is eligible for the scholarship program must submit an application and sign a written contract agreeing to accept a scholarship and to serve for the period of service obligation in a HMSA. The terms of the contract are set forth in the statute. *Id.* § 254*l* (f). The ultimate decision of the place of performance of the service obligation is left to the discretion of the Secretary of Health & Human Services. *See id.* § 254*l* (f)(1)(B)(iv). This is not to say that the recipient plays no part in determining where she will perform her service obligation. About one year before a scholarship recipient is scheduled to begin her service obligation, she receives a package of materials explaining the assignment process and informing her of the available locations listed on the HMSA placement opportunity list ["HPOL"]. Recipients who return their placement requests by September 30 may apply for any position in the nation listed on the HPOL. Requests received after September 30 are allocated to a region of the nation on the basis of the recipient's preferences and regional needs. These recipients must locate a place to perform their service obligations within the regions to which they are assigned. Recipients who have not located a position by April are assigned to a particular location by the NHSC. The statute requires that the Secretary "assign to an area a Corps member who has (and whose spouse, if any, has) those characteristics which are characteristics which increase the probability of the member's remaining to serve the area upon completion of his assignment." *Id.* § 254f(f). The Secretary must also give priority to applicants who request an assignment in areas with the greatest need for health services. *Id.* § 254f(c)(1).

Under the private practice option set forth in § 254n, the Secretary may release an individual from all or part of her service obligation provided that the individual agrees to engage in full-time private clinical practice for a period equal to the remaining period of her service obligation. If the individual is performing her service obligation as a member of the Corps when she requests the private practice option, she must continue to work in the HMSA to which she was originally assigned. *Id.* § 254n(a)(1). An individual who chooses the private practice option at the outset of her service obligation must serve in a HMSA selected by the Secretary. *Id.* § 254n(a)(2). Before the statute was amended in 1981, the private practice option was restricted to high-priority HMSAs. The 1981 amendment deleted that restriction, thus making the private practice option available in any HMSA selected by the Secretary. *See* Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, 97 Stat. 357 (amending 42 U.S.C. § 254n); *see*

*also* H.R.Conf.Rep. No. 208, 97th Cong., 1st Sess. 784, *reprinted in* 1981 U.S.Code Cong. & Admin.News 396, 1010, 1146. As when assigning members of the Corps, the Secretary will only approve private practice option placements in HMSAs listed on the HPOL.

The statute sets forth the damages for which a recipient will be liable for breach of the scholarship contract. 42 U.S.C. § 254o. The recipient is required to repay three times the amount of her scholarship plus interest at the maximum prevailing rate as determined by the Treasurer of the United States, if she fails to commence or complete her service obligation. *Id.* § 245o (b)(1)(A). An earlier version of the statute did not provide for treble damages; instead, the United States was entitled to recover "an amount equal to the cost of tuition and other education expenses, and scholarship payments, ... plus interest at the maximum prevailing rate." 42 U.S.C. § 234(f)(1) (repealed effective Oct. 1, 1977).

## II.

During her second year of medical school, Dr. Duffy received $8,961.00 under the precedent statutory program, the Public Health and National Health Service Corps Scholarship Program ["PH/NHSC"], 42 U.S.C. § 234 (repealed effective Oct. 1, 1977). Under the current NHSC scholarship program, Dr. Duffy received $17,765.00 during her third and fourth years of medical school. Because she received scholarships for three years, she incurred a three-year service obligation. Upon her graduation from medical school, Dr. Duffy received a four-year deferment of her service obligation while she completed a residency program in obstetrics and gynecology. Her service obligation was scheduled to begin in July, 1984.

In June, 1983, Dr. Duffy received the information packet describing the NHSC placement process. She returned the site selection questionnaire in July, 1983. The questionnaire requested that she choose five of the ten regions and rank them according to her preference, including at least two of regions four, six, and seven

among her five preferences. Dr. Duffy, however, listed only region five, which encompasses Michigan.

On November 6, 1983, Dr. Duffy submitted a private practice option application stating her intention to establish a sole practice in obstetrics and gynecology in Wixom, Michigan. Her application was supported by the Comprehensive Health Planning Council of Southeastern Michigan, an agency designated by the Secretary to assist recipients in finding private practice option locations in that area. When the regional office of the NHSC informed Dr. Duffy that Wixom had not been considered a priority area in Michigan and that additions to the HPOL would have to be made through normal channels, she responded that she needed a response quickly so that she could begin setting up her practice in Wixom.

In March, 1984, the director of the NHSC advised Dr. Duffy that her private practice option application had not been approved. The director stated that the HMSA that encompassed Wixom had first been designated in 1978, but did not currently meet the criteria required to maintain designation as a HMSA. Dr. Duffy was permitted a one-month extension to select an approvable private practice option in Michigan in a HMSA with a shortage of specialists in obstetrics and gynecology. Dr. Duffy responded that, relying on the designation of Wixom as a HMSA, she had already spent over $100,000.00 setting up her practice and would accept no other assignment. On September 14, 1984, the NHSC advised her that she was in default on her scholarship contract and demanded repayment with interest as required by the statute.

The United States filed this suit in district court to recover the amount for which Dr. Duffy was liable under the statute for breach of contract. The district court initially denied both parties' motions for summary judgment on the ground that there was an issue of fact as to whether the Secretary had designated Wixom as a HMSA. Upon the United States' motion for reconsideration, the district court granted the government's motion for summary

judgment, holding that the defendant had no absolute right to select the area in which to perform her service obligation, and that the Secretary had discretion to refuse to approve the site selected by Dr. Duffy. The court initially entered judgment for the United States, but later vacated that judgment on the defendant's motion. After further argument on the issue, the district court ruled that the government was indeed entitled to recover treble damages on the NHSC claim. The court, therefore, entered judgment in favor of the United States in the amount of $118,932.96 on the NHSC claim and $30,396.27 on the PH/NHSC claim.

### III.

#### A.

When reviewing a motion for summary judgment, this court applies the same test as that used by the district court. *Berlin v. Michigan Bell Telephone Co.*, 858 F.2d 1154, 1161 (6th Cir.1988). Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions, and affidavits reveal that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ. P. 56(c). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original). In deciding a motion for summary judgment, the court will view the evidence in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

#### B.

Dr. Duffy argues that the Secretary was required to release her from her service obligation because she agreed to engage for a period of time equal to the remaining period of her service obligation in a full-time private clinical practice in what was, at the time of her application for assignment, a health manpower shortage area. Dr. Duffy's argument that she is not in breach of her scholarship contract ignores the unavoidable fact that although Wixom may have been designated a HMSA, it was never listed on the HPOL, and therefore, the Secretary never approved her application for a private practice option releasing her from her service obligation.

The NHSC scholarship program was enacted by Congress for the express purpose of providing an adequate supply of health care professionals in geographic areas that have experienced a shortage of services provided by such health care professionals. *See* H.Rep. No. 266, 94th Cong. 2d Sess. 22, *reprinted in* 1976 U.S.Code Cong. & Admin.News 4947, 4964. The NHSC scholarship program was not designed to subsidize the medical education of physicians, but rather as a means of overcoming a geographic maldistribution of health care professionals. S.Rep. No. 887, 94th Cong., 2d Sess. 201 (1976). To that end, the assignment of scholarship recipients to HMSAs is left to the Secretary's discretion. The Secretary is given few guidelines for assigning scholarship recipients, other than those that further the purpose of the statute to rectify the geographic maldistribution of health care professionals. *E.g.*, 42 U.S.C. § 254f(c)(1) (the Secretary shall "give priority to an application which provides for the assignment of Corps members to an area ... with the greatest health manpower shortage"); *id.* § 254f(f) (the Secretary shall "seek to assign to an area a Corps member who has (and whose spouse, if any, has) those characteristics which are characteristics which increase the probability of the member's remaining to serve the area upon completion of his assignment"). The application and assignment procedure used by the Secretary accommodates the recipients' personal preferences to the extent that their preferences do not interfere with the redistributive purpose of the statute.

Dr. Duffy attempts to support her argument by citing the legislative purpose behind the 1981 amendment to the NHSC program, but she mischaracterizes the purpose and effect of the amendment. The amendment was designed to make the private practice option more attractive and thereby encourage eligible medical students to participate in the NHSC program. The House Conference Report states:

> In an effort to strengthen the private practice option, the conference substitute allows the Secretary more flexibility in encouraging individuals to serve, at their financial risk, in underserved areas during their obligated period.... The Conferees are aware that, to some extent, the success of the private practice option depends on easing the placement strategy of serving priority one and two HMSA's. As long as the emphasis for placing the salaried members of NHSC remains on these priority areas, it is acceptable to the Conferees that a more broad-based range of HMSA's receive individuals under the private practice option.

H.R.Conf.Rep. No. 208, 97th Cong., 1st Sess. 784, *reprinted in* 1981 U.S.Code Cong. & Admin.News 1010, 1146.

■ The 1981 amendment deleted a provision of the NHSC that restricted private practice options to "high-priority" HMSAs. The amended statute now permits the Secretary to assign a scholarship recipient to any HMSA, but it does not provide that the scholarship recipient shall serve at the HMSA of her choice. *See Fisher v. Bowen,* 659 F.Supp. 784, 789 (D.Or.1987) (Congress did not intend for the 1981 amendment to allow scholarship recipients absolute discretion in determining their assignments).

We conclude that the 1981 amendment did not alter the principle that the assignment of scholarship recipients to geographic areas in need of the services of health care professionals is a matter of the Secretary's discretion. The 1981 amendment enhanced the Secretary's discretion by permitting the assignment of recipients who exercise the private practice option to any

HMSA *"selected by the Secretary."* 42 U.S.C. § 254n(a)(2) (emphasis added). The means by which the Secretary selects a HMSA is, in part, the HPOL. Designation of an area as a HMSA is not sufficient to garner the Secretary's immediate approval of an application for a private practice option in that area. The Secretary requires that the location of a private practice option be listed on the HPOL.

The creation of the HPOL is not mandated by Congress as is the designation of HMSAs, *see* 42 U.S.C. § 254e, but by permitting the Secretary to assign recipients to areas where they are most needed, the HPOL is a reasonable method for the Secretary to ensure that the neediest areas will be served. While considering appropriations for the NHSC in 1983, the Senate Committee on Appropriations commented on the Secretary's use of the HPOL:

> The Committee therefore directs that ... all [private practice option] placements only be approved if they are on the HMSA opportunity list. The Committee feels that the HMSA opportunity list is an essential first step in targeting obligors to areas of greatest need and expects that the placement process in subsequent years will be further refined to assure that [private practice options] and Federal placements are only approved in areas of greatest need.

S.Rep. No. 247, 98th Cong., 1st Sess. 29 (1983). *Accord* H.R.Conf.Rep. No. 422, 98th Cong., 1st Sess. 12 (1983) ("The conferees are agreed that the National Health Service Corps private practice option placements should be approved only if they are on the health manpower shortage area opportunity list....").

To effect a redistribution of health care professionals requires that the Secretary retain discretion to assign scholarship recipients to those areas lacking adequate health care services. Congress found that several factors have perpetuated the maldistribution of health care professionals: the apparently unlimited demand for and ability to pay for health services by affluent groups in our society; the preference of physicians to live on the east or west

coast in suburban or small urban communities with good housing, good schools, easy access to shopping, cultural attractions, and opportunities for professional advancement; the concentration of medical training in large, academic, urban medical centers with an emphasis on specialization. *See* H.Rep. No. 266, 94th Cong., 2d Sess. 25–26, *reprinted in* 1976 U.S.Code Cong. & Admin.News 4947, 4967–68.

To entice physicians away from areas already saturated with health care facilities, Congress offers scholarships to those medical students who agree to serve those communities that would otherwise lack access to medical services. It is essential to the statutory scheme that the Secretary consider the distribution of health care professionals across the nation and within a particular region and assign recipients to those areas most in need of their services. *See Rendleman v. Oregon,* 860 F.2d 1537, 1543 (9th Cir.1988) ("The very purpose of this Congressional program is to have new health care professionals deliver medical service to areas suffering shortages of medical personnel."). If recipients are able to demand assignment to a particular location, then the purpose of the scholarship program is defeated. Indeed, a diminution of the Secretary's discretion in assigning recipients would exacerbate the effect of those factors that Congress articulated as causing the geographic maldistribution of physicians. Giving paramount effect to the recipient's preference as to where she will practice has no place in a statutory program designed to overcome such personal preferences.

■ Because Dr. Duffy was informed when she first submitted her private practice option application that Wixom was not listed on the HPOL, she cannot now argue that she justifiably relied on the designation of Wixom as a HMSA as a ground for assuming that her application would be approved.

In conclusion, the Secretary's discretion in assigning recipients to HMSAs is an indispensable component of the NHSC scholarship program. Requiring that Dr. Duffy exercise the private practice option in a HMSA listed on the HPOL is an appropriate means by which the Secretary can ensure that the purposes of the program are advanced. Thus, when she refused to choose a location listed on the HPOL, Dr. Duffy was in breach of her scholarship contract.

## C.

■ Dr. Duffy challenges the district court's conclusion that the statute requires the assessment of treble damages on scholarships she received under the revised NHSC program during her last two years of medical school. The statute provides the following damages for failure to commence or complete service obligations:

[T]he United States shall be entitled to recover from the individual an amount determined in accordance with the formula

$$A = 3\Theta \frac{(t\text{-}s)}{(t)}$$

in which "A" is the amount the United States is entitled to recover; "$\Theta$" is the sum of the amounts paid under this subpart to or on behalf of the individual and the interest on such amounts ...; "t" is the total of months in the individual's period of obligated service; and "s" is the number of months of such periods served by him....

42 U.S.C. § 254o (b)(1)(A). The statute also provides that "[t]he Secretary may waive, in whole or in part, the rights of the United States to recover amounts under this section in any case of extreme hardship or other good cause shown, as determined by the Secretary." *Id.* § 254o (c)(3).

Dr. Duffy does not argue the validity or enforceability of § 254o. *See United States v. Redovan,* 656 F.Supp. 121, 126–29 (E.D.Pa.1986) (upholding validity and enforceability of § 254o damages provision), *aff'd,* 826 F.2d 1057 (3d Cir.1987); *United States v. Haithco,* 644 F.Supp. 63, 68–70 (W.D.Mich.1986) (same); *United States v. Swanson,* 618 F.Supp. 1231, 1242–44 (E.D. Mich.1985) (same). Dr. Duffy argues that the statute does not require the imposition of treble damages, and therefore, the district court had discretion to award a lesser amount. Relying on the fact that she expended a considerable sum to refurbish of-

fice space for her practice in Wixom, Dr. Duffy asserts that the district court should not have awarded treble damages against her. Dr. Duffy misconstrues the statute and misperceives the purpose of the treble damage provision.

There is no indication in the statute that a court has discretion to award a lesser amount of damages than that provided in the statute. The Secretary may waive the right of the United States to recover all or some of the amount to which the United States is entitled in cases of extreme hardship or other good cause, but the Secretary's option cannot be construed to confer discretion on a court to award a lesser amount of damages. It is clear from the legislative history that Congress' purpose behind the scholarship program was to encourage medical students to set up practice in areas that have traditionally been deprived of access to adequate medical services. Congress was not simply providing medical students with a means of financing their medical education. If such were Congress' intent, then a treble damage provision may indeed be an excessive penalty. But because the purpose of the program is more than to finance medical education, it is reasonable for Congress to raise the level of damages for a recipient's breach of her service obligation.

The judgment of the district court is therefore AFFIRMED.