**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Fred C. WILLIAMS, Defendant–**
**Appellant.**

No. 92–15042.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 15, 1993.

Decided May 19, 1993.

Jonathan Rothschild, Mesch, Clark & Rothschild, Tucson, AZ, for defendant-appellant.

James D. Whitney, Asst. U.S. Atty., Tucson, AZ, for plaintiff-appellee.

Before: GOODWIN, HUG, and FLETCHER, Circuit Judges.

GOODWIN, Circuit Judge:

Fred C. Williams, Jr., appeals from the district court's grant of summary judgment and treble damages to the United States. The government sued to collect money paid to Williams while he was attending medical school on a National Health Service Corps ("NHSC") scholarship, pursuant to 42 U.S.C. § 254*l*.

Williams argues that because he did not accept payment under his scholarship contract during his last year of medical school, he is not subject to the treble damages provisions of 42 U.S.C. § 254*o* (b). Instead, Williams contends that he is required only to repay the government "the amount which has

been paid to him, or on his behalf, under the contract" pursuant to 42 U.S.C. § 254o (a)(1)(D). We reject Williams' construction of the statute and affirm.

## BACKGROUND

Williams attended the Baylor College of Medicine in Houston, Texas ("Baylor"), from July 1979 until his graduation in June 1983. In order to finance his education at Baylor, Williams applied for, and received, an NHSC scholarship. The NHSC Scholarship Program is governed by 42 U.S.C. §§ 254l–254o, and administered by the Department of Health and Human Services ("HHS").[1] For each year of participation in the program, scholarship recipients are awarded the cost of tuition, funds for other reasonable educational expenses, and a monthly stipend. In exchange for such financial assistance, scholarship recipients agree to serve in the NHSC for one year for each year scholarship funds are provided, with a minimum obligation of two years.

On May 24, 1979, Williams signed a written contract with the NHSC Scholarship Program for the 1979–1980 school year. Williams exercised options to extend that contract for the 1980–1981 and 1981–1982 school years as well. During his fourth and last year of medical school, however, Williams elected not to extend his contract. Williams explains that upon his entry into the program, he was initially interested in the field of primary care. Prior to his fourth year, however, Williams decided to change the course of his career and specialize in surgery. As a result of his decision not to extend his contract, no funds were paid to him or on his behalf during that fourth year.

Williams received a total of $22,182 in scholarship funds during his three years of participation in the program: $7,283 in 1979–1980, $6,642 in 1980–1981, and $8,257 in 1981–1982.

Prior to Williams' graduation from Baylor, HHS sent Williams a Deferment Information Bulletin explaining that participants in the program may request deferment of their service obligations so that they can participate in an approved residency program. The Bulletin explained that any request for deferment must be received by HHS by June 30, 1983. After Williams did not respond to the Bulletin, HHS sent another notice advising him to respond immediately so as not to miss the deferment deadline. Again, Williams did not respond. Consequently, HHS notified Williams that he would be placed in default status as of September 30, 1983. In a November 14, 1983 letter sent by certified mail to Williams' permanent address, HHS explained that because of his default, Williams was liable for treble damages which he would have to pay by September 30, 1984 pursuant to 42 U.S.C. § 254o (b)(1)(B)(i). Williams made no payments within the prescribed period.

The record reveals that Williams subsequently moved to California and failed to inform HHS of his new address. In California, Williams began a neurosurgery residency which he completed in Arizona. During this period, Williams paid HHS a total of $6,770 on his debt through a collection agency.

In 1987, Williams telephoned HHS expressing his desire to fulfill his obligation through service. Congress had recently enacted the Special Repayment Provision of the NHSC Scholarship Program which allowed participants like Williams who were in breach of their obligations to be relieved of their liability by serving in an area designated as a Health Manpower Shortage Area. Ultimately, however, Williams and HHS were unable to find a site in need of his particular specialty: neurosurgery (a specialty not approved by the scholarship program). As a result, HHS again notified Williams that he was obligated to pay his debt, and sent a December 1989 letter demanding payment of the balance of Williams' debt, which, the letter explained, amounted to $159,369 as of November 30, 1989. This amount consisted of $66,546 in principal (the original loan amount of $22,182, trebled), and $92,823 in interest. When Williams failed to respond, the matter

---

1. Congress established the NHSC Scholarship Program to provide primary health services in underserved areas. *See Rendleman v. Bowen,* 860 F.2d 1537, 1541 (9th Cir.1988); *United States v. Citrin,* 972 F.2d 1044, 1046 (9th Cir. 1992).

was transferred to the Department of Justice.

The district court granted summary judgment to the government after finding Williams liable for defaulting on his loan agreement. The court concluded that Williams' failure to renew his contract for the fourth and final year of medical school in no way constituted a rescission of the previous contracts Williams had signed. The court awarded the government the full $166,255.68 plus interest and costs.

## STANDARD OF REVIEW

■ A grant of summary judgment is reviewed de novo, as a question of law. *Jones v. Union Pacific R.R.*, 968 F.2d 937, 940 (9th Cir.1992). Viewing the evidence in the light most favorable to the nonmoving party, this court determines whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir.1992). This court may affirm the district court on any ground supported by the record. *United States v. State of Washington*, 969 F.2d 752, 755 (9th Cir.1992).

## DISCUSSION

Williams does not deny the fact that he has breached his NHSC scholarship contract. The sole issue in this case involves which damages provision applies to Williams: (1) 42 U.S.C. § 254o (b)(1)(A), providing for a payment of treble damages, to be determined by a specified formula; or (2) 42 U.S.C. § 254o (a)(1), providing for a payment of damages equal to the amount which has been paid to the scholarship recipient, or on his behalf, under the contract.

Section 254o (b)(1)(A), the NHSC Scholarship Program's treble damages provision, provides in relevant part:

[I]f an individual breaches his written contract by failing (for any reason not specified in subsection (a) of this section . . .) either to begin such individual's service obligation under section 254l of this title in accordance with section 254m or 254n of this title or to complete such service obligation, the United States shall be entitled to recover from the individual an amount determined in accordance with [a specified formula equaling treble damages].

42 U.S.C. § 254o (b)(1)(A). The relevant portion of subsection (a) of section 254o provides:

(1) An individual who has entered into a written contract with the Secretary under section 254l of this title and who—

(A) fails to maintain an acceptable level of academic standing in the educational institution in which he is enrolled (such level determined by the educational institution under regulations of the Secretary),

(B) is dismissed from such educational institution for disciplinary reasons,

(C) voluntarily terminates the training in such an educational institution for which he is provided a scholarship under such contract, before the completion of such training, or

(D) fails to accept payment, or instructs the educational institution in which he is enrolled not to accept payment, in whole or in part, of a scholarship under such contract,

in lieu of any service obligation arising under such contract, shall be liable to the United States for the amount which has been paid to him, or on his behalf, under the contract.

42 U.S.C. § 254o (a)(1).

This is the first case to present a subsection (a)(1)(D) fact pattern. Neither of the government's cited cases, *United States v. Bills*, 822 F.2d 373 (3d Cir.1987) and *United States v. Turner*, 660 F.Supp. 1323 (E.D.N.Y. 1987), is on point because the defendants in both cases continued to receive scholarship funds through graduation, and neither defendant refused receipt of scholarship funds, in whole or in part. Therefore, this case presents a statutory interpretation question of first impression.

*Interpretation of § 254o*

The statute expressly provides that the treble damages provision applies only when scholarship recipients breach their written

contract by means other than those detailed in subsection (a). Williams argues that he should not be subjected to the treble damages provision because he falls within subsection (a)'s purview. He contends that subsection (a)(1)(D) applies to him because he "fail[ed] to accept payment, or instruct[ed] the educational institution in which he [was] enrolled not to accept payment, in whole or in part, of a scholarship under such contract," 42 U.S.C. § 254o (a)(1)(D), when he did not extend his scholarship to include his fourth and final year at Baylor. Williams suggests that the "plain meaning" of the provisions at issue compels this result. *Cf. Green v. Bock Laundry Machine Co.*, 490 U.S. 504, 509–10, 109 S.Ct. 1981, 1984–85, 104 L.Ed.2d 557 (1989) (unless the language of a statute compels an odd or absurd result, a court must interpret a statute in accordance with its plain meaning). We are not persuaded that subsection (a)(1)(D) has a "plain meaning."

Under Williams' broad interpretation of subsection (a)(1)(D), he is only obligated to repay the government the actual funds he received plus interest (minus the amount he had already repaid) because he paid for his final year of medical school himself and thereby did not accept payment, in part, of his NHSC scholarship.

This interpretation, however, misconstrues the meaning of the term "scholarship" as it is used in section 254l generally, and section 254o (a)(1)(D) in particular. Williams assumes his "scholarship" includes four years of entitlement. Consequently, Williams interprets subsection (a)(1)(D)'s use of the term "scholarship" also to refer to all four years of his medical school education. The statute, however, provides a narrow definition of the term "scholarship." Section 254l refers to a "scholarship" as a single, one-year unit corresponding to a given school year. *See* 42 U.S.C. § 254l (f)(1)(B)(iv) (written scholarship contract must contain an agreement by the individual "to serve for a time period ... equal to—(I) one year for each school year for which the individual was provided a scholarship under the Scholarship Program"). Section 254o also uses the term "scholarship," and specifically refers to section 254l. We therefore see no reason to attribute two different meanings to the same term.

We construe subsection (a)(1)(D) to treat each year that a recipient receives scholarship funds as separate and independent. This is consistent with the overall incremental structure of the scholarship program, which imposes a one-year service obligation for each year of funding (with a two-year minimum). Subsection (a)(1)(D) applies only in situations where a scholarship recipient signs a written contract for a given year, and then later, during the course of that year, fails to accept payment or directs his or her school not to accept payment, in whole or in part, for *that given year*. In such situations, the individual does not incur a service obligation for that specific year, but instead must repay the government only those funds that had in fact been paid to him or her, or on his or her behalf, under the contract.[2]

Therefore, Williams was still obligated to serve for three years under the NHSC. He could not evade his previously incurred ser-

**2.** For example, consider the following scenario. A scholarship participant is in her third year of medical school. She received NHSC scholarship funding for her first two years, and therefore incurred two years of service obligation. Again in her third year, she signs a continuing contract and begins to receive scholarship funds. The NHSC pays her first semester's tuition and costs directly to the university, and provides her with one semester's worth of a stipend and money for expenses. During the semester break, however, she meets a Beverly Hills plastic surgeon who persuades her that her true calling is not in helping those in underserved areas, but instead in helping Southern Californians perfect their appearances at any cost. Our medical student finds the offer too tempting, and too financially lucrative, to reject. Upon her return to school, she directs administrators not to accept further payment from NHSC.

In such a situation, subsection (a)(1)(D) provides that, notwithstanding the fact that she signed a written contract obligating her for a third year, our budding plastic surgeon is only required to repay any amount of funds she received, or were paid to the university on her behalf, during that third year. This repayment is "in lieu of any service obligation" for that third year. None of this, however, in any way affects her previously incurred obligation to serve in the NHSC for the two years for which she did receive full funding.

vice obligations by electing not to accept additional scholarship funds for a fourth year. Acceptance of Williams' argument would, in effect, grant scholarship participants the option to transform their scholarships into ordinary student loans in their final year of medical school. This court has noted, however, that the NHSC Scholarship Program "is not intended 'as a mechanism solely to subsidize health professional education,' but 'as a means to overcome a geographic maldistribution of health professionals.'" *Rendleman v. Bowen,* 860 F.2d 1537, 1541 (9th Cir.1988) (quoting S.Rep. No. 94–887, 94th Cong., 1st Sess. 201 (1975)).

Williams contends that our interpretation of the statute is unfair because it requires that once an individual accepts monies under the NHSC Scholarship Program, he can never leave the program without incurring a service obligation or suffering treble damages. Our interpretation, however, is in keeping with the statutory scheme. Congress intended that, except in unusual cases, those who receive scholarship funds either complete their service obligations or pay substantial penalties. As the D.C. Circuit has noted, "[w]hen Congress created the scholarship program in 1972, it recognized that exceptions to the damages provision might sometimes be appropriate," but the exceptions are narrow. *Buongiorno v. Sullivan,* 912 F.2d 504, 506 (D.C.Cir.1990) (referring to 42 U.S.C. § 254o (d)(2), which provides for partial or total waiver of a service obligation or damages payment in limited circumstances due to impossibility, undue hardship, or unconscionability); *see also United States v. Duffy,* 879 F.2d 192, 197 (6th Cir.1989) ("The statute also provides that '[t]he Secretary may waive, in whole or in part, the rights of the United States to recover amounts under this section in any case of extreme hardship or other good cause shown, as determined by the Secretary.' [42 U.S.C.] § 254o (c)(3).").

*Appointment to the Corps*

█ Finally, Williams argues that he cannot be subject to the statute's treble damages provision because he had not been "appointed to the NHSC." In support of this argument, Williams relies on a dissenting opinion by Judge Becker in *United States v. Bills,* 822 F.2d 373, 380–82 (3d Cir.1987). Judge Becker interpreted the treble damages provision to apply only after an individual has formally been appointed to the Corps. 822 F.2d at 380. We reject this argument.

The majority in *Bills* correctly adhered to the clear meaning of the HHS's implementing regulations. *See* 822 F.2d at 377–78. The relevant HHS regulation provides: "If a participant fails to begin or complete the period of obligated service ..., *including failing to comply with the applicable terms and conditions of a deferment* ..., [then he or she is subject to treble damages]." 42 C.F.R. § 62.10(c) (emphasis added). Whether an individual has been "appointed to the Corps" is irrelevant for purposes of 42 C.F.R. § 62.10(c), especially in cases like this one where the participant has failed to comply with the terms and conditions for deferment.

Williams defaulted on his service obligation when he failed to comply with the deferment requirements. It was because of his default that Williams was not "appointed to the Corps." In such a situation, an individual is properly subjected to treble damages under 42 U.S.C. § 254o and 42 C.F.R. § 62.10(c).

AFFIRMED.