# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1717

_____

Quentin K. Tanko,                       *
                                        *
            Appellant,                  *
                                        *   Appeal from the United States
      v.                                *   District Court for the
                                        *   District of Nebraska.
United States of America,               *
Department of Health and Human          *
Services, Bureau of Health Professions, *
                                        *
            Appellee.                   *

_____

Submitted:  September 15, 2005
Filed:  November 3, 2005

_____

Before LOKEN, Chief Judge, BYE and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

Quentin K. Tanko agreed to participate in the National Health Service Corps
(NHSC) Scholarship Program, a program established by Congress to address health
service shortages in medically underserved areas. Tanko accepted scholarship funds
for two years of medical school, but failed to provide the corresponding period of

service in a medically underserved area. He appeals the district court's[1] determination this breach makes him liable for treble damages. We affirm.

I

On February 4, 1999, Quentin Tanko signed four one-year contracts to participate in the NHSC Scholarship Program, 42 U.S.C. §§ 254*l*-q. In exchange for the government's payment of tuition, reasonable education expenses, and a monthly stipend while attending school, participants in the NHSC Scholarship Program agree to provide health services in a health professional shortage area (HPSA)[2] upon completion of their training. The four contracts Tanko signed were embodied in a single document. The first contract covered his first school year, the 1999-2000 school year. Immediately below the signature line following the terms of the first contract was a line which stated "Optional Contracts." The optional contracts covered the 2000-01 school year, the 2001-02 school year, and the 2002-03 school year, with separate signature lines for each contract. Each optional contract simply adopted the contract terms set forth for the 1999-2000 school year, making those terms applicable for an additional year.

The contracts set forth the government's remedies in the case of a breach. If a student cannot provide health services in an HPSA because he must leave school for academic or disciplinary reasons, voluntarily terminates his schooling, or "fails to accept payment . . . in whole or in part, of a scholarship under this contract," the student is only responsible to "repay to the United States all funds paid to the applicant . . . within 3 years of the date the applicant becomes liable to make

---

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

[2]An HPSA is an area of the country with a high infant mortality rate, high birth rate, or high rate of poverty. 42 C.F.R. Part 5, App. A.

payment." If, however, the participant fails to provide his period of service obligation "for any reason other than those [specified above]," the contracts provide "the United States shall be entitled to recover an amount equal to three times the scholarship funds awarded, plus interest." The contract terms essentially mirror the statutory requirements set forth in 42 U.S.C. § 254o (2001)[3] which govern an NHSC participant's obligations in the event of a breach.

Tanko attended Creighton University during all four of the relevant school years. He accepted the scholarship funds from the government in his first two years, for a total of $88,731. On May 5, 2001, however, Tanko advised the government he was declining scholarship money for the 2001-02 school year. Likewise, on February 10, 2002, Tanko advised the government he was declining scholarship money for the 2002-03 school year.

Tanko graduated from Creighton University School of Medicine in May 2003. In July 2003, he entered an orthopedic surgery residency training program, a program not approved as an NHSC postgraduate training program. On September 8, 2003, the government notified Tanko he was in default for failing to begin his service obligation of two years. The government told Tanko his debt, including treble damages, was due on July 1, 2004, and provided him with a schedule showing the amounts the government paid on his behalf, the dates of those payments, and the principal and interest due (including treble damages). At that time, Tanko's obligation totaled $380,964.45.

On February 13, 2004, Tanko brought this action for declaratory relief in federal district court asking the court to declare the NHSC Scholarship Program

_____

[3]The statute was amended on October 26, 2002. See Pub. L. No. 107-251, Title III, § 313(a), 116 Stat. 1651. The pre-amended version of the statute governs this case.

enforceable only to the extent of the actual amounts disbursed to him. Tanko argued the contracts he signed were a single contract for a four-year period, not four separate one-year contracts, and thus his refusal to accept payments for the last two scholarship years triggered the statutory and contract terms which allowed him to repay just the funds paid to him because he "fail[ed] to accept payment . . . in whole or in part, of a scholarship under this contract."

The government filed a counterclaim contending it should recover treble damages. The government argued each school year constituted a separate contract, and Tanko accepted full payment of scholarship funds for the first two contracts. The government contended the payment-in-part provision did not apply to those two years, and Tanko's breach therefore triggered treble damages.

The parties filed cross-motions for summary judgment. The district court granted the government's motion, concluding Tanko signed four separate contracts, accepted full payment for the first two contract years, and was responsible for treble damages for failing to provide the government with two years of service. Tanko timely appealed.

II

This case involves the interpretation of a contract and the statute upon which the contract is based. Our review of both is de novo. See Advantage Consulting Group, Ltd. v. ADT Sec. Sys., Inc., 306 F.3d 582, 585 (8th Cir. 2002) (contract); Am. Simmental Ass'n v. Coregis Ins. Co., 282 F.3d 582, 591 (8th Cir. 2002) (statute).

The treble damage provisions of the NHSC program, while severe and onerous, provide no basis for reversing the district court. The treble damages have been upheld as reasonable because the injury caused by a participant's breach – the loss of a medical doctor's service in an HPSA – is difficult to calculate. See Buongiorno v.

-4-

Sullivan, 912 F.2d 504, 510 (D.C. Cir. 1990); see also United States v. Citrin, 972 F.2d 1044, 1051 (9th Cir. 1992) (concluding NHSC's treble damage provisions are not a "penalty" which violates the Due Process Clause).

The governing statute sets forth four instances in which a participant who fails to provide his service obligation will be required to repay only "the amount which has been paid." Those four instances are when the participant:

A) fails to maintain an acceptable level of academic standing in the educational institution in which he is enrolled (such level determined by the educational institution under regulations of the Secretary),

(B) is dismissed from such educational institution for disciplinary reasons,

(C) voluntarily terminates the training in such an educational institution for which he is provided a scholarship under such contract, before the completion of such training, or

(D) fails to accept payment, or instructs the educational institution in which he is enrolled not to accept payment, in whole or in part, of a scholarship under such contract[.]

42 U.S.C. § 254o(a)(1)(A)-(D) (2001). In all other situations where a participant breaches a contract by failing to begin the service obligation, the statute provides "the United States shall be entitled to recover from the individual an amount determined in accordance with" a formula for treble damages. Id. at § 254o(b)(1)(A).

None of the four exceptions to the trebling provision applies to Tanko's first two contract years. For the 1999-2000 and 2000-01 school years, he accepted the government funds in whole and did not leave school voluntarily or for academic or disciplinary reasons. At the end of his training, he breached those two contracts by

-5-

failing to begin his service obligation. Thus, the statute – and the contracts which directly incorporate the statutory provisions – require Tanko to pay treble damages.

Tanko argues his four separate one-year contracts should be construed as a single four-year contract. Such an interpretation would place Tanko within the exception for failing to accept payment "in part" because he declined the scholarship funds for his last two years of schooling. Tanko relies upon the fact he signed all four contracts on the same day as part of a single transaction. See Lippo v. Mobil Oil Corp., 776 F.2d 706, 713 n.13 (7th Cir. 1985) ("Although the franchise agreement is evidenced by five separate documents, they were executed at the same time between the same parties, for the same purpose and as parts of a single transaction, and so are to be read together and construed as a single contract.").

The format and language of the contracts Tanko signed do not support his argument. The primary contract prominently identifies itself as a contract for the 1999-2000 school year alone. The language used in the "Optional Contracts" which follow clearly identify them as separate contracts for separate school years, merely incorporating the language used in the primary contract. In addition, section B.7 of each contract obligated the applicant to "serve one year of obligated service for each school year the scholarship is provided, with a minimum obligation of two years." This language shows the parties intended to enter four separate contracts with a concomitant period of obligated service tied to each separate year scholarship funds were provided.

The Ninth Circuit addressed this issue, concluding the exception for failing to accept payment "in part" applies only when the participant fails to accept partial payment for any *given year*, and does not exempt the participant from treble damages for any year in which he receives full funding:

-6-

We construe subsection (a)(1)(D) to treat each year that a recipient receives scholarship funds as separate and independent. This is consistent with the overall incremental structure of the scholarship program, which imposes a one-year service obligation for each year of funding (with a two-year minimum). Subsection (a)(1)(D) applies only in situations where a scholarship recipient signs a written contract for a given year, and then later, during the course of that year, fails to accept payment or directs his or her school not to accept payment, in whole or in part, for *that given year*. In such situations, the individual does not incur a service obligation for that specific year, but instead must repay the government only those funds that had in fact been paid to him or her, or on his or her behalf, under the contract.

United States v. Williams, 994 F.2d 646, 649 (9th Cir. 1993).

We agree with the reasoning and result in Williams. In this case, Tanko's refusal of scholarship funds for the last two years of medical school did not affect his previously-incurred obligation to provide service for the two years for which he did receive full funding.

Tanko contends Williams is distinguishable because Williams signed his contracts in three successive fiscal years one at a time, whereas Tanko signed all four contracts on the same day at the beginning of his schooling. This slight factual difference is not sufficient to produce a different outcome.[4] The relationship between the government and participants in the NHSC program is not only contractual, but statutory. United States v. Vanhorn, 20 F.3d 104, 100 (4th Cir. 1994). Tanko's contention the length of a contract turns upon whether a participant signed multiple contracts on a single day or in successive years conflicts with the statutory scheme,

---

[4]The ability to sign all four contracts before the first year of medical school primarily benefits the participant, not the government. A student who may not otherwise be able to commit to medical school for financial reasons obtains the government's guarantee of assistance prior to the start of his or her schooling.

which clearly defines scholarships as "single, one-year unit[s] corresponding to a given school year." <u>Williams</u>, 994 F.2d at 649 (citing 42 U.S.C. § 254*l*(f)(1)(B)(iv)). Thus, neither the contracts nor the statutory scheme supports Tanko's claim.

III

We affirm the judgment of the district court in all respects.

_____