Neal RENDLEMAN, M.D., Plaintiff,

v.

Louis W. SULLIVAN, M.D., Secretary of United States Department of Health and Human Services, et al., Defendants,

and

United States of America, Counterclaimant.

Civ. No. 84–800–FR.

United States District Court, D. Oregon.

March 15, 1991.

Jonathan M. Hoffman, Douglas C. MacCourt, Martin, Bischoff, Templeton, Langslet & Hoffman, Portland, Or., for plaintiff.

Charles H. Turner, U.S. Atty., Jack G. Collins, Riley J. Atkins, Asst. U.S. Attys., Portland, Or., Carol C. Conrad, Dept. of Health and Human Services, Rockville, Md., for Federal defendants and counterclaimant the U.S.

OPINION

FRYE, District Judge:

The matters before the court are 1) the second renewed motion for summary judgment of the defendants and the counterclaimant, United States of America (# 150); and 2) the motion for summary judgment of the plaintiff, Neal Rendleman, M.D. (# 157).

## FACTS

Some of the facts stated are taken from the opinion in *Rendleman v. Bowen*, 860 F.2d 1537 (9th Cir.1988).

Rendleman is a participant in the National Health Service Corps (NHSC) Scholarship Program, established by Congress in 1976 to address the maldistribution of health care manpower in the United States. Under the program, eligible students in professional health degree programs receive scholarships that cover their educational expenses and include a stipend for living expenses. 42 U.S.C. § 254g. In return, the student agrees to serve "in a health manpower shortage area (designated under section 254e of this title) to which such individual is assigned by the Secretary." 42 U.S.C. § 254*l*–1(f)(1)(B)(iv) (Supp. 1990).

Rendleman applied for and received a NHSC scholarship in 1978. As required by law, Rendleman submitted a signed contract with his application in which he agreed to serve "in a health manpower shortage area ... to which [the applicant] is assigned." Rendleman renewed his agreement the following year in order to obtain a further scholarship. The total amount Rendleman received under the scholarship program was $31,995.12.

Upon his graduation from medical school in 1981, Rendleman received three one-year deferments of his service obligation in order to complete his training in a residency program. In June, 1983, Rendleman dropped out of his residency program without prior approval of the NHSC as was provided for in their agreements.

In August, 1983, Rendleman informed the Public Health Service Corps (PHSC) personnel by telephone of his withdrawal from the residency program and his opening of the East Side Community Clinic in North Portland, Oregon. He subsequently wrote the PHSC on September 26, 1983 to give "formal notification of my fulfillment of my NHSC obligation at this setting." Although at that time a portion of North Portland was designated as a health manpower shortage area (HMSA), the clinic was not located within that area. Rendle-man was notified by the PHSC that service at that clinic would not fulfill his NHSC obligation because the clinic was not located in a HMSA and was not on the HMSA "Placement Opportunity List."

In October, 1984, the organization that operated the Eastside Community Clinic sought designation of the poverty population of Multnomah County, Oregon as an HMSA. This application was rejected in June, 1985. Upon submission of further information, in November, 1985, the Secretary approved the HMSA designation of two census tracts for the North Portland area, which included the clinic.

In April, 1984, the NHSC assigned Rendleman to the State of Alabama after he failed to obtain a position in an HMSA during the "Early Decision Alternative" period, and there were no openings available in NHSC Region X (the Northwest). Rendleman refused to accept the assignment and was declared in default on August 1, 1984.

Rendleman brought this action against the Secretary of the United States Department of Health and Human Services and others seeking a declaratory judgment that he is not in default on his obligation and that the area where the East Side Community Clinic is located is a HMSA. The United States counterclaimed for treble damages as provided for by statute and the written contract signed by Rendleman.

After the initial summary judgment motions, the district court entered judgment for Rendleman. On appeal, the Ninth Circuit Court of Appeals reversed the judgment in favor of Rendleman and directed "the district court to enter summary judgment in favor of defendants on the issue of Rendleman's default." 860 F.2d at 1544. The Court of Appeals concluded that "[o]ur opinion does not foreclose consideration of a remand by the district court to the agency for its limited consideration of a waiver of Rendleman's obligations pursuant to section 254*o*(c)(3)." *Id.*

The opinion contains the following footnote:

Although we disagree with the district court that Rendleman's service at the Eastside Community Clinic fulfilled his NHSC contract obligations, the district court may consider whether his service in establishing a medical clinic in a poverty area, or the financial resources available to Rendleman as a result of such service, is sufficient for the agency to consider whether to credit Rendleman with his time at the Eastside Community Clinic, grant a waiver of all or part of his obligation as a result of his prior service, or otherwise not subject Rendleman to the full damage provisions provided by section 254o(b)(1). *See* 42 C.F.R. § 62.12(d). 860 F.2d at 1544, n. 8. Pursuant to the direction of the circuit court, the district court remanded the case to the Department of Health and Human Services (HHS) to consider Rendleman's request for a waiver pursuant to § 254o(c)(3).

Congress has directed the HHS to provide for waivers of payments and service obligations as follows:

> The Secretary shall by regulation provide for the partial or total waiver or suspension of any obligation of service or payment by an individual under the Scholarship Program (or a contract thereunder) ... whenever compliance by the individual ... would involve extreme hardship to the individual and if enforcement of such obligation with respect to any individual would be unconscionable.

42 U.S.C. § 254o(d)(2).

In accordance with the direction of Congress, the HHS has by regulation prescribed criteria for guidance in deciding requests for waivers. 42 C.F.R. § 62.12(c) sets out the criteria for allowing a waiver of payment and service obligations on the grounds of impossibility as follows:

> Compliance by a participant with a service or payment obligation will be considered impossible if the Secretary determines, on the basis of information and documentation as may be required, that the participant suffers from a physical or mental disability resulting in the permanent inability of the participant to perform the service or other activities which

would be necessary to comply with the obligation.

42 C.F.R. § 62.12(d) sets out the criteria for a waiver on the grounds of extreme hardship and unconscionability as follows:

> In determining whether to waive or suspend any or all of the service or payment obligations of a participant as imposing an undue hardship and being against equity and good conscience, the Secretary, on the basis of information and documentation as may be required, will consider:
>
> (1) The participant's present financial resources and obligations;
>
> (2) The participant's estimated future financial resources and obligations; and
>
> (3) The extent to which the participant has problems of a personal nature, such as physical or mental disability, terminal illness in the immediate family which so intrude on the participant's present and future ability to perform as to raise a presumption that the individual will be unable to perform the obligation incurred.

On May 8, 1989, Rendleman applied to the HHS for a waiver of his service or payment obligations. By letter dated May 25, 1989, the HHS asked Rendleman to submit information and documentation in support of his request for a waiver, including information about and documentation of his income and assets and problems of a personal nature. Rendleman mailed information to the HHS in support of his request for a waiver on July 20, 1989.

In a letter dated February 8, 1990, attached to this opinion as Exhibit A, the HHS denied Rendleman's request for a waiver. The HHS concluded that Rendleman had submitted no documentation of a physical or mental disability which would support a waiver of his payment obligation on the grounds of impossibility. The HHS further concluded that Rendleman's income and expenses did not preclude payment of his debt; that his prospects for future income have improved in light of his residency training; and that he did not indicate any personal problems which would impinge on his ability to repay his debt.

The parties have filed cross-motions for summary judgment. The issues remaining in this action are 1) whether the agency acted arbitrarily and capriciously in denying Rendleman's request for a waiver of his obligation to repay his debt; and 2) whether the treble damages provision acts as a penalty as applied to the facts of this case.

## CONTENTIONS OF THE PARTIES

The HHS contends that it is entitled to judgment for the full amount of its counterclaim—that is, three times the amount of the scholarship awarded to Rendleman plus interest. The HHS explains that Rendleman is in default on his payment obligation, and the statutory provision allowing treble damages has been consistently upheld by other courts and is not unenforceable as a penalty.

The HHS argues that its decision not to grant to Rendleman a waiver of the service requirement was proper in that Rendleman did not set forth any physical or mental disability which would justify a waiver upon the ground of impossibility. Further, the HHS argues that it reasonably concluded that Rendleman did not meet the requirements for a waiver on the basis of hardship and unconscionability. The HHS asserts that Rendleman is able to make payment in lieu of service based upon the fact that his income is likely to increase substantially upon completion of his residency in internal medicine, and Rendleman has shown no pressing personal problem that would keep him from practicing medicine.

Rendleman contends that the denial of the waiver was arbitrary, capricious and contrary to law for the following reasons: 1) the HHS treated as legally irrelevant the fact that he had served a poor and homeless patient population at a reduced salary for over six years in a HMSA; 2) the HHS took into account the income of his wife in determining whether the denial of the request would result in financial hardship for him; 3) the HHS ignored his actual earnings over the last six years and relied instead upon statistical data concerning the income of internists in general, thereby penalizing him for having made a commitment to serve the homeless instead of crediting him for his laudable services.

In addition, Rendleman argues that the application of the treble damages clause is a penalty as applied to him because he has provided valuable services as a physician in a HMSA. Rendleman explains that the liquidated damages clause is designed to compensate the public for the loss of the service of a physician in a HMSA, and that has not happened in this case.

## APPLICABLE STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir.1976).

## ANALYSIS

Rendleman is in default, and the United States is entitled to recover the monies awarded to Rendleman on its counterclaim unless the HHS improperly applied the criteria for a waiver to Rendleman, thereby requiring this court to remand the case to the HHS for further consideration, or the statutory damages clause is unenforceable as a penalty against Rendleman.

The HHS need not give credit to Rendleman for services he provided at self-selected areas. *See, e.g., United States v. Rayford*, Civil No. 88–2046–S 1989 WL 94843 (D.C.Kansas); *United States v. Redovan*, 656 F.Supp. 121, 127 (E.D.Pa.1986),

*aff'd without opinion*, 826 F.2d 1057 (3d Cir.1987); *Mattis v. United States*, 648 F.Supp. 137, 140 (E.D.Wis.1986). However, 42 U.S.C. § 254*o*(d)(2) states that "[t]he Secretary shall by regulation provide for the partial or total waiver or suspension of any obligation of ... payment ... whenever compliance by the individual ... would involve extreme hardship to the individual and if enforcement of such obligation with respect to any individual would be unconscionable." This mandate requires the HHS to consider whether the enforcement of all or any part of Rendleman's payment obligation would involve extreme hardship to him and, if so, whether the enforcement of all or any part of the payment obligation would be unconscionable. Congress did not limit the relevant grounds upon which the agency may make this determination.

■ The court concludes that Rendleman's application for a waiver should be remanded to the HHS for further consideration of all grounds upon which Rendleman asserts that he is entitled to a waiver.

## CONCLUSION

The United States' second renewed motion for summary judgment (# 150) is denied. Rendleman's motion for summary judgment (# 157) is granted. This case is remanded to the HHS for further consideration in accordance with this opinion.

## EXHIBIT A

## DEPARTMENT OF HEALTH AND HUMAN SERVICES

Feb. 8, 1990.

Mr. Jonathan M. Hoffman

Attorney at Law

Martin, Bischoff, Templeton,

Ericsson & Langslet

3100 First Interstate Tower

Portland, Oregon 97201

Dear Mr. Hoffman:

This is a followup to your request on behalf of Dr. Neal Rendleman, concerning his request for a waiver of his National Health Service Corps Scholarship obligation.

Since Dr. Rendleman is in default and has a payment obligation rather than a service obligation, his waiver request was considered on the basis of his monetary debt.

Our letter of May 25, 1989, advised you of the documentation needed to support a waiver request and the criteria which must be met. We have reviewed Dr. Rendleman's submission and have determined, for the reasons set out below, that it does not meet the criteria for a waiver of his monetary obligation. Accordingly, his request for a waiver is denied.

Under the statute, a waiver may be granted where compliance with the payment obligation is (1) impossible or (2) would involve extreme hardship and if enforcement would be against equity and good conscience. By regulation, compliance is deemed impossible where the scholar has documented that he suffers from a physical or mental disability that results in his permanent inability to "perform the ... activities which would be necessary to comply with the obligation"—here, to repay the debt. 42 CFR 52.12(c). As you explained in your letter of July 20, 1989, Dr. Rendleman is not seeking a waiver on the basis of a medical hardship. Since no documentation regarding a physical or mental disability has been submitted by Dr. Rendleman, a waiver of his payment obligation may not be granted on the ground of impossibility.

Under 42 CFR 62.12(d), in order to determine if payment would impose an extreme hardship and be against equity and good conscience, the Secretary is required to take into consideration the following criteria:

(1) the individual's present financial resources and obligations;

(2) the individual's estimated future financial resources and obligations; and

(3) the extent to which the individual has problems of a personal nature (e.g., physical or mental disability, terminal illness in the immediate family), which so intrude on the individual's ability to perform as to raise a presumption that the individual will be unable to per-

form the obligation (here, to pay the debt) incurred.

The financial data provided with Dr. Rendleman's submission indicates that the Rendlemans' adjusted gross income for 1988 was reported at $99,945.00. Even allowing a third of that for tax purposes (Federal and State), there is still approximately $66,630.00 per annum or $5,552.50 of disposable income per month. Subtracting their monthly expenses of $3,737.00 leaves an amount of $1,815.50 per month that could be used to repay Dr. Rendleman's Scholarship debt.

In your July 20, 1989, letter you have provided information, but not documentation from his training program, that Dr. Rendleman is currently in residency training. You indicate in that letter that he is still employed as a physician and is earning approximately $31,000.00. That income level is a minimal reduction from his 1988 income level, which was approximately $35,000.00. We must also consider that living expenses are higher for a single individual who has to bear them alone than for an individual who can share such expenses with a spouse/partner. Moreover, at the completion of his training as a board eligible/certified internist, Dr. Rendleman clearly has the potential to greatly increase his income in the future and to make payments at a level commensurate with his income level at that time.*

Thus, the information supplied does not establish that Dr. Rendleman's current and future financial resources and obligations warrant a waiver of his payment obligation on the basis of extreme hardship. He clearly has the financial ability to begin repaying his debt, based on his current income and expenses, while his future financial prospects for repayment are even better. Accordingly, we do not believe the first two regulatory criteria are met.

With respect to the third regulatory criterion, Dr. Rendleman has not indicated any problems of a personal nature which would intrude, in any way, on his ability to repay his debt. Indeed, it is clear that Dr. Rendleman is able to generate income through the practice of his profession, as he is apparently currently doing so both in his practice and in the course of his residency program. Consequently, the third criterion has not been met.

Finally, even if one were to assume that a service obligation still existed and thus consider whether that obligation should be waived on hardship grounds, it is clear that Dr. Rendleman would still not meet the regulatory criteria for waiver. For the reasons set out above, the financial criteria are not met. Furthermore, service itself would not constitute an extreme hardship within the meaning of the third criterion: Dr. Rendleman has pointed to no personal circumstances (such as terminal illness in the family) that would impair *his* ability to fulfill a service obligation. As noted above, his current personal circumstances apparently permit him to practice his profession and to undertake further professional training. A mere change of location for the individual or the family is not an "extreme hardship" within the meaning of the regulations.

For all these reasons, Dr. Rendleman's request for a waiver is denied.

Sincerely yours,
/s/Carolyn Beth Lee
for Norris S. Lewis, M.D.
Director
Division of Health Services
Scholarships

cc: Reading file
Carol Conrad, OGC
Robin Lee, OGC
Jeanette Pang, DFS

* According to the journal, *Medical Economics*, typical practice earnings for internists in 1988 were $198,640 (gross), or $104,920 (net). *Medical Economics*, September 4, 1989, page 133.

Jack Collins, Assistant U.S. Attorney

Prepared by: HRSA/BHCDA/DHSS/DB: PCooper:gew:16Jan90:W# 1313A

Revised by: HRSA/BHCDA/DHSS/DB: PCooper:gew:26Jan90:W# 1313A

Revised by: HRSA/BHCDA/DHSS/DB: PCooper:ds:06Feb90:W#1313A

Revised by: HRSA/BHCDA/DHSS/DB: PCooper:ds:07Feb90:W# 1313A

Revised by: HRSA/BHCDA/DHSS/DB: PCooper:ds:08Feb90:W# 1313A