Neal RENDLEMAN, M.D.,
Plaintiff–Appellee,

v.

Donna SHALALA, Secretary of United States Department of Health and Human Services;[*] Edward Martin, Director, Bureau of Health Care Delivery and Assistance; James H. Daugherty, Director, Division of Health Services Scholarships et al., Defendants–Appellants.

No. 91–35596.

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 10, 1993.[**]

Decided April 14, 1994.

---

[*] Donna Shalala has been substituted for her predecessor in office, Louis W. Sullivan, pursuant to Federal Rule of Appellate Procedure 43(c)(1).

[**] The panel unanimously finds this case suitable for decision without oral argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34.4.

John F. Daly, Department of Justice, Washington, DC, for plaintiff-appellants.

Jonathan M. Hoffman, Martin, Bischoff, Templeton, Langslet & Hoffman, Portland, OR, for defendant-appellee.

Before WALLACE, Chief Circuit Judge, SKOPIL and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Defendants-appellants, the Secretary of Health and Human Services, et al., appeal the district court's decision to remand this action to the Secretary. The district court exercised jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. *See Chugach Alaska Corp. v. Lujan,* 915 F.2d 454, 457 (9th Cir.1990) (order remanding case to Secretary is final where three criteria met).[1] We reverse and remand the case to the district court for further proceedings.

I

A

Neal Rendleman participated in the National Health Service Corps (NHSC) Scholarship Program, established by Congress "to address the maldistribution of health care manpower in the United States." *Rendleman v. Bowen,* 860 F.2d 1537, 1539 (9th Cir.1988) ("*Rendleman I* "). "Under the program, the NHSC grants eligible medical students scholarships covering their educational costs and living expenses." *United States v. Hatcher,* 922 F.2d 1402, 1404 (9th Cir.1991)

(citing 42 U.S.C. § 245*l*(g) (1988)). In return, the scholarship recipient commits to one year of obligated service for each year of educational support (but not less than two years) to be performed in a health manpower shortage area (HMSA) "to which he is assigned by the Secretary." 42 U.S.C. § 254*l*(f)(1)(B)(iv).

A participant who refuses to satisfy this service obligation must pay the government three times the sum of the amounts awarded under the scholarship plus interest discounted proportionately for months actually served. 42 U.S.C. § 254*o*(b)(1)(A). Congress recognized, however, that certain circumstances may warrant an exception from this triple payback obligation and consequently directed the Secretary to establish regulations providing

> for the partial or total waiver or suspension of any obligation of service or payment by an individual under the Scholarship Program (or a contract thereunder) ... whenever compliance by the individual is impossible or would involve extreme hardship to the individual and if enforcement of such obligation with respect to any individual would be unconscionable.

42 U.S.C. § 254*o*(d)(2).

Pursuant to this directive, the Secretary established a regulation prescribing criteria she will consider when deciding waiver requests. With regard to impossibility as a ground for a waiver, the regulation provides:

> Compliance by a participant with a service or payment obligation will be considered impossible if the Secretary determines, on the basis of information and documentation as may be required, that the participant suffers from a physical or mental disability resulting in the permanent inability of the participant to perform the service or other activities which would be necessary to comply with the obligation.

---

1. In this case, as in *Chugach Alaska Corp.,* "(1) the district court conclusively resolve[d] a separable legal issue, (2) the remand order forces the agency to apply a potentially erroneous rule which may result in a wasted proceeding, and (3) review would, as a practical matter, be foreclosed if an immediate appeal were unavailable" because the Secretary cannot appeal her own agency's determinations. *Chugach Alaska Corp.,* 915 F.2d at 457.

42 C.F.R. § 62.12(c). The regulation governing the second basis for a waiver, extreme hardship and unconscionability, advises:

the Secretary ... will consider:

(1) The participant's present financial resources and obligations;

(2) The participant's estimated future financial resources and obligations; and ·

(3) The extent to which the participant has problems of a personal nature, such as physical or mental disability, terminal illness in the immediate family which so intrude on the participant's present and future ability to perform as to raise a presumption that the individual will be unable to perform the obligation incurred.

42 C.F.R. § 62.12(d).

### B

When the time came for Rendleman to fulfill his service obligation, he chose not to work at the HMSA designated by the Secretary. Instead, Rendleman started a clinic in another location not yet designated an HMSA, although it apparently qualified for and later received such a designation. *Rendleman I*, 860 F.2d at 1542. He then brought suit seeking a declaratory judgment that he was not in default on his obligation. *Id.* at 1541. Defendants filed a counterclaim seeking treble damages. · *Id.* The parties filed cross-motions for summary judgment and the district court ruled in favor of Rendleman.

On appeal, we reversed and remanded the case to the district court with instructions to enter summary judgment in favor of defendants on the issue of Rendleman's default. *Id.* at 1544. We also commented that "[o]ur opinion [did] not foreclose consideration of a remand by the district court to the agency for its limited consideration of a waiver of Rendleman's obligations pursuant to" § 254o(d)(2).[2] *Id.*

On remand, the district court granted summary judgment on the issue of Rendleman's default and remanded to the agency for consideration of a waiver. After considering Rendleman's waiver application, the director of Health Service Scholarships informed Rendleman's counsel by letter that Rendleman's waiver request had been denied. The director noted that Rendleman had not claimed physical or mental disability and therefore could not receive a waiver on the basis of impossibility. The director then discussed the criteria set forth in § 62.12(d), governing the undue hardship and unconscionability basis for a waiver, and concluded that Rendleman's circumstances did not satisfy these criteria.

Rendleman filed a second amended complaint with the district court in which he added a new claim for relief, contending that the denial of the waiver was "arbitrary, capricious, and otherwise not in accordance with law," and seeking declaratory relief and a further remand to the Secretary for additional consideration. Rendleman's new claim presented three challenges to the agency's waiver decision: (1) the agency should have considered Rendleman's work in an HMSA as part of the analysis; (2) the agency improperly considered the income of Rendleman's wife; and (3) the agency erred in relying on statistical data regarding the earnings of internists as a measure of Rendleman's potential income rather than focusing solely on his actual earnings to date. *Rendleman v. Sullivan*, 760 F.Supp. 842, 845 (D.Or.1991) ("*Rendleman II* "). The parties renewed their cross-motions for summary judgment.

The district court concluded that "Congress did not limit the relevant grounds upon which the agency may make [the waiver] determination," granted summary judgment for Rendleman and ordered the Secretary to give further consideration to the waiver request, including "all grounds upon which Rendleman asserts that he is entitled to a waiver." *Id.* at 846. Defendants then filed this timely appeal.

### II

■ We review de novo a grant of summary judgment. *Jones v. Union Pacific*

---

**2.** In *Rendleman I*, we cited § 254o(c)(3). However, the waiver provision had been redesignated § 254o(d)(2).

*R.R.*, 968 F.2d 937, 940 (9th Cir.1992). We will only set aside an agency's determination if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Hatcher*, 922 F.2d at 1405–06.[3] "An agency's interpretation of its own regulation is entitled to a high degree of deference and will be upheld as long as it is not plainly erroneous or inconsistent with the regulation." *Washington State Health Facilities, Ass'n v. Washington Dep't of Social & Health Serv.*, 879 F.2d 677, 681 (9th Cir.1989) (citing *United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977)).

### III

We first address Rendleman's contention that the agency should have considered his work in an HMSA. In this claim, Rendleman challenges the agency's interpretation of its regulation as well as its authority to promulgate it.

### A

■ Rendleman and the government dispute whether the listed criteria in § 62.12(d) define the scope of an agency's analysis of a waiver application based on alleged hardship and unconscionability. Rendleman maintains that the regulation merely advises that the Secretary "will consider" the listed criteria, including problems of a personal nature "such as" those listed in the regulation, but does not preclude consideration of other evidence that bears on undue hardship and unconscionability, namely his continuing service in an HMSA.[4] We find, however, that the agency's decision to interpret this regulation as identifying each and every relevant con-

sideration is neither plainly erroneous nor inconsistent with the regulation. While the regulation does not absolutely foreclose the relevance of other evidence, this potential for breadth does not invalidate the agency's more limited and reasonable construction of the regulation.

■ We also reject Rendleman's suggestion that basing a waiver decision exclusively on the factors listed in § 62.12(d) collapses the impossibility and undue hardship bases for a waiver because each assesses the scholar's physical and mental ability to perform the obligation incurred. The regulation on its face, without adding unidentified considerations, creates two distinct bases for a waiver. The agency may grant a waiver on the grounds of impossibility when a participant's physical or mental disability results in a "permanent inability" to comply with his obligation. 42 C.F.R. § 62.12(c). For this waiver, financial hardship does not factor into the agency's decision as it does for a waiver premised on undue hardship and unconscionability.

■ The two bases are also distinct because in evaluating undue hardship the agency's consideration is not limited to mental or physical disabilities that result in "permanent inability" to perform the obligation. Instead, it may consider a "physical or mental disability, terminal illness in the immediate family which so intrude on the participant's present and future ability to perform as to *raise a presumption* that the individual will be unable to perform the obligation incurred." *Id.* § 62.12(d)(3) (emphasis added). We can determine no reason for considering the agency's interpretation either plainly erroneous or inconsistent with the regulation.[5]

**3.** Defendants did not argue, either in the district court or on appeal, that waiver decisions are "committed to agency discretion by law." *See, e.g., United States v. Arron*, 954 F.2d 249, 252 n. 4 (5th Cir.1992) (waiver decision "remains solely within the province of the NHSC"). We, therefore, have not considered this possibility.

**4.** Rendleman incorrectly interprets footnote eight of our decision in *Rendleman I* as subscribing to his view of the regulation. *See Rendleman I*, 860 F.2d at 1544 n. 8. In that footnote, we did not preclude the agency from considering Rendleman's service when evaluating his waiver appli-

cation but neither did we require the agency to consider such evidence. Rather, we acknowledged that the agency should have the opportunity to interpret its regulation and that on remand it might or might not find Rendleman's service relevant to its inquiry.

**5.** Rendleman attempts to rely on materials outside the administrative record to demonstrate that the agency's decision in this instance departs from its practice on other occasions. Review under the Administrative Procedure Act, 5 U.S.C. §§ 701–706, normally proceeds on the basis of the administrative record before the fed-

## B

This, however, does not end our inquiry. Rendleman maintains that if we uphold the agency's interpretation of the regulation then we must conclude the regulation conflicts with the language and purpose of the statute.

■ Legislative regulations promulgated in response to an express delegation of authority to an agency to elucidate a specific provision of the statute are given "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). We apply this deferential standard to our review of this regulation because Congress specifically directed the Secretary to establish a regulation that provides for the partial or total waiver of a scholarship debt. *See* 42 U.S.C. § 254o(d)(2); *see also Buongiorno v. Sullivan*, 912 F.2d 504, 509 (D.C.Cir.1990) (applying this standard when reviewing facial challenge to § 254o(d)(2) brought on other grounds).

■ Rendleman claims that the regulation contradicts congressional design in several ways. For one, he urges the court to conclude the regulation does not withstand examination under *Chevron* because it contains an explicit list of criteria to consider when assessing waiver applications.[6] This argument focuses on Congress's instruction to provide for a waiver *"whenever* compliance" is impossible or involves extreme hardship and enforcement would be unconscionable. *See* 42 U.S.C. § 254o(d)(2) (emphasis added). In Rendleman's view, by choosing the word "whenever" Congress directed the agency to permit consideration of all evidence relevant to undue hardship and unconscionability.

In support of the regulation, the Secretary explains that Congress explicitly left a gap for her to fill. *See Chevron*, 467 U.S. at 843–44, 104 S.Ct. at 2781–82. The Secretary responded accordingly and promulgated a regulation that sets forth the exclusive criteria to consider when assessing waiver applications.

Our task is "to gauge the Secretary's interpretation by its statutory parent, and not to contrast it with an interpretive rival." *Buongiorno*, 912 F.2d at 510; *see also Air North Am. v. Department of Transp.*, 937 F.2d 1427, 1431–32 (9th Cir.1991) (court must defer to alternative preferred by agency charged with implementing statute). It would require placing undue emphasis on Congress's selection of the term "whenever" for us to conclude this regulation is arbitrary, capricious or manifestly contrary to the statute, and that effort would ignore the deference accorded the agency in this instance. We therefore conclude the Secretary's decision to establish a guided approach to waiver applications does not contradict congressional design.

■ Rendleman maintains, however, that even if the agency may limit the evidence relevant to a waiver application, it is manifestly contrary to the statute to exclude evidence of service in an HMSA. To illustrate this alleged inconsistency, Rendleman points to his own circumstances. He alleges that he must abandon his current practice in an HMSA and accept more lucrative employment elsewhere in order to satisfy his obligation under the triple payback provision. This result, he contends, contravenes the

---

eral agency. *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44, 105 S.Ct. 1598, 1606–07, 84 L.Ed.2d 643 (1985); *Animal Defense Council v. Hodel*, 840 F.2d 1432, 1436 (1988), amended, 867 F.2d 1244 (9th Cir.1989). The circumstances of the agency's decision on Rendleman's waiver application do not warrant departing from this general rule. *See Animal Defense Council*, 840 F.2d at 1436 (court may inquire outside record when necessary to explain agency action, when agency relies on documents not in record, or when necessary to explain technical terms or complex subject matter). Moreover, the extra-record materials submitted by Rendleman do not establish a "settled" prece-

dent contrary to the result in this case. Cf. *Atchison, T. & S.F. Ry. Co. v. Wichita Bd. of Trade*, 412 U.S. 800, 805–08, 93 S.Ct. 2367, 2373–75, 37 L.Ed.2d 350 (1973).

**6.** Rendleman actually maintains that a pre-*Chevron* decision from this circuit, *Pacific Coast Medical Enter. v. Harris*, 633 F.2d 123 (9th Cir.1980), guides our review of the agency's interpretation of the statute. To the extent any conflict exists between *Pacific Coast Medical Enter.* and *Chevron*, we of course are bound to follow the standards established in *Chevron*.

statute's purpose, which he describes as seeking to "permanently fill the need for health professionals in HMSAs." *See* 42 U.S.C. § 254f(f) (1988) ("Secretary shall seek to assign to an area a Corps member who has ... those characteristics ... which increase the probability of the member's remaining to serve the area upon completion of his assignment period").

Rendleman neglects to acknowledge, however, that the supply of scholars does not meet the demands of the HMSAs. As a consequence, the Secretary does not treat all HMSAs equally. The HMSAs are prioritized by need and scholars are directed to those areas designated as having the greatest need.[7] *Rendleman I,* 860 F.2d at 1543. Service in an HMSA is therefore not necessarily sufficient to satisfy a scholar's service obligation. *Id.* at 1543.

The Secretary enjoys "essentially uncircumscribed authority in assigning scholars to HMSAs." *Hatcher,* 922 F.2d at 1404; *see also Rendleman I,* 860 F.2d at 1539 ("law provides little guidance on the assignment of non-corps personnel"); *Arron,* 954 F.2d at 252 ("statutory scheme governing the NHSC scholarship program makes clear that the Secretary of HHS retains sole authority to determine how to administer the program, including site selection"). She chooses to utilize this broad authority to ensure service at locations she deems most critical. Omitting service in an HMSA as a basis for a waiver guarantees that these efforts to place scholars in the areas of the greatest need are not circumvented through the waiver process. It is neither arbitrary, capricious, nor manifestly contrary to the statute for the Secretary to decline to relinquish, either directly or indirectly, the task of prioritizing the needs of the many HMSAs.

■ Rendleman argues that the agency's regulation is not entitled to the deference that it would normally receive because it departs from an earlier version of the regulation. The question, however, "is not whether an agency regulation represents a change in policy, but whether it satisfies the standard that applies to all agency rulemaking." *Na-*

*tional Medical Enter., Inc. v. Sullivan,* 957 F.2d 664, 669 (9th Cir.1992).

At one time, a defaulting scholar was obligated to pay "an amount equal to the cost of tuition and other education expenses, and scholarship payments, paid under this section, plus interest." Emergency Health Personnel Act Amendments of 1972, Pub.L. No. 92–585 § 5 (amending Public Health Service Act by adding § 225(f)(1)). During this time, the regulation required the agency to consider service in an HMSA. *See* 42 C.F.R. § 62.-9(d)(3) (1976) ("[t]he extent to which the individual is practicing the profession for which support was provided in a manner which is similar to and consistent with the position which such individual would have occupied in the Public Health Service or the Corps"). After Congress modified the statute to triple the payback obligation on default and limit the circumstances under which a scholar could discharge his debt in bankruptcy, *see* 42 U.S.C. § 254o(b), (d)(3), the Secretary revoked the existing regulations and adopted regulations that eliminated service in an HMSA as a ground for a waiver. 45 Fed.Reg. 55,426-01. During the notice and comment period for the new regulations, one critic described the triple-payback provision as an "exorbitant" penalty. *Id.* (comment to § 62.10). The Secretary defended the proposed regulations, responding that the regulation merely reflects the statute, which Congress modified to reinforce the notion that it did not intend for the NHSC program to "subsidize health professional education." *Id.* The Secretary's modification of the regulation, eliminating consideration of service in any location other than the one identified by the Secretary, reflects Congress's expectation that, "except in unusual cases, those who receive scholarship funds either complete their service obligations or pay substantial penalties." *United States v. Williams,* 994 F.2d 646, 650 (9th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 547, 126 L.Ed.2d 449 (1993); *see also United States v. Melendez,* 944 F.2d 216, 219 (5th Cir.1991) (punitive nature of liquidated damage provision indicates Congress's intent that scholar

---

7. For a more complete discussion of the assignment process, see *Rendleman I,* 860 F.2d at 1539–40, 1543, and *Hatcher,* 922 F.2d at 1404–05.

fulfill obligation except in extreme circumstances).

Rendleman additionally contends that the regulation treats undue hardship and unconscionability as one basis for a waiver rather than two as the statute directs. The regulation mirrors the language of the statute, which arguably, if not clearly, treats undue hardship in conjunction with unconscionability as a single basis for a waiver. *See* § 254*o*(d)(2) (waiver warranted when compliance is impossible *or* would impose extreme hardship *and* be unconscionable); *but see Arron,* 954 F.2d at 252 (dicta describing statute as permitting waiver "in cases of extreme hardship *or* good cause") (emphasis added). We reject each of Rendleman's arguments for invalidating the regulation.

IV

Rendleman presented two other challenges to the agency's interpretation and application of the regulation. He maintains that the agency improperly considered his potential future income and his spouse's current income.[8] The *regulation* explicitly makes present and future financial resources relevant to a determination of undue hardship and unconscionability. 42 C.F.R. § 62.-12(d)(1), (2). We certainly do not find it plain error for the agency to interpret the regulation as precluding consideration of a participant's voluntary decision to accept a position substantially less lucrative than he is capable of obtaining. Any other conclusion would allow a defaulting NHSC scholar to manufacture undue hardship.

Regarding Rendleman's earnings potential, the agency noted that Rendleman "clearly has the potential to greatly increase his income in the future." In support of this conclusion, the agency noted a journal article that concluded the "typical practice earnings" in 1988 for a physician in Rendleman's field was $198,640 (gross), or $104,920 (net). Thus, the agency did not conclude, as Rendleman suggests, that he will necessarily

earn a certain amount upon leaving his current practice in an HMSA to assume a more lucrative position. Rather, the agency concluded that these figures demonstrate Rendleman has the potential to increase greatly his future earnings. Rendleman has cited no evidence before the agency that would even suggest a contrary conclusion. *Animal Defense Council,* 840 F.2d at 1436 (review generally limited to record before agency). We find no error in the agency's assessment of Rendleman's earnings potential.

Prior to this portion of the agency's decision, it calculated the amount available to repay Rendleman's scholarship debt, using the current income of Rendleman and his spouse. Ultimately, however, the agency rested its decision on Rendleman's personal potential for increasing his income and the reduced expenses Rendleman incurs as an individual who shares expenses with a spouse rather than bearing them alone. We do not find it plain error to interpret the statute in this manner. The agency's application and interpretation of the regulation survives review.

V

We hold that the district court erred in granting Rendleman's motion for summary judgment on the basis that the agency had not considered all of Rendleman's grounds for a waiver. Our decision does not address the other issue presented in Rendleman's motion for summary judgment, the validity of the treble damages provision, nor does it resolve the government's counterclaim for the statutory triple payback. Accordingly, the judgment of the district court is **VACATED** and the case is **REMANDED** for further proceedings.

---

**8.** The district court remanded this action to the Secretary for consideration of "all grounds upon which Rendleman asserts he is entitled to a waiver." We cannot be certain if the district court's decision responds in any way to these two as-

pects of Rendleman's amended complaint. In any event, the parties have briefed these issues and their resolution will only require reference to the agency's decision. Accordingly, we will resolve them in this appeal.