**UNITED STATES of America, Plaintiff,**

v.

**Kamau Bandele KOKAYI, M.D., Defendant.**

**No. 93–CV–2733(FB).**

United States District Court, E.D. New York.

July 18, 1997.

Zachary W. Carter, United States Attorney, Eastern District Of New York, by Randi S. Weinberg, Special Assistant U.S. Attorney, Brooklyn, NY, for U.S.

Linda Howard Ahmed, Baltimore, MD, for Defendant.

## MEMORANDUM AND ORDER

BLOCK, District Judge:

This case arises out of a conceded default by defendant Kamau Bendele Kokayi, M.D. ("Kokayi") in the repayment of scholarship funds that he received from the National Health Services Corps ("NHSC") Scholarship Program. See 42 U.S.C. § 254*l* et seq. Plaintiff United States of America ("United States") moves the Court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Kokayi cross moves for summary judgment, arguing that this action is barred by the six-year statute of limitations applicable to contract actions. 28 U.S.C. § 2415(a). The Court concludes that this action is not time-barred and that the United States has established that it is entitled to judgment as a matter of law. Accordingly, the United States's motion for summary judgment is granted and Kokayi's cross motion for summary judgment is denied.

## BACKGROUND

In May of 1979, Kokayi applied for participation in the NHSC Scholarship program, which is administered by the United States Department of Health and Human Services ("HHS"), in order to finance his education at the Yale University School of Medicine. Kokayi received scholarship funds for academic years 1979–1980 and 1981–1982. In order to receive these funds, Kokayi signed a contract which, inter alia, obligated him to perform one year of full-time clinical service for each year the scholarship award was provided, with a minimum obligation of two years. Kokayi would be required to perform this service in a geographical area that suffered from a shortage of health care providers. The contract also provided that in the event that Kokayi breached the agreement, the United States would be entitled to recover damages equaling three times the scholarship funds awarded, plus interest thereon.

Kokayi graduated from medical school in May of 1982 and was granted a three-year deferment from NHSC so that he could complete his family practice residency. In 1984, however, NHSC sent Kokayi literature regarding its 1985 placement program. NHSC advised Kokayi that the placement process consisted of three steps. Under the Early Decision Alternative ("EDA"), Kokayi had until October 31, 1984 to select any approved site in the country that was contained on the Health Manpower Shortage Area Placement Opportunity List ("HPOL"). If he failed to take advantage of the EDA, he would be assigned to a specific state based upon his responses to a Site Selection Questionnaire. If he did not obtain employment at a site in the assigned state by April 15, 1985, NHSC itself would assign him to a specific site.

Thereafter, Kokayi requested that he be assigned to a family practice site within New York City. He was advised that NHSC had not approved any positions for family practitioners in New York City and was encouraged to use the EDA to obtain placement as close as possible to New York City. Kokayi took no action, and after the deadline for the EDA had passed, NHSC assigned Kokayi to the State of New York based upon his answers to the Site Selection Questionnaire. He was advised to contact the regional office in order to initiate the process of "matching" with a placement site. NHSC also informed him that if he failed to match with a site in New York by April 15, 1985, NHSC would select a site for him, which site would not necessarily be within New York State.

After Kokayi failed to initiate the matching process by the April 15 deadline, the NHSC assigned him to serve in Gasden, Alabama. Kokayi objected to this placement on social and cultural grounds, and he was subsequently reassigned to Gary, Indiana. In July of 1985, Kokayi advised NHSC that he was declining the Gary, Indiana appointment and would remain in practice in Brooklyn's Bedford–Stuyvesant neighborhood. Thereafter, NHSC notified Kokayi that he had been placed in default of his scholarship service obligation as of July 1, 1985, and that he was

consequently liable for damages pursuant to 42 U.S.C. § 254o(b)(1)(A).

In 1986, NHSC twice agreed to execute a forbearance agreement in order to give Kokayi the opportunity to fulfill his obligation through service; however, Kokayi declined. Also in 1986, Kokayi sought a hardship waiver of his scholarship debt, which request for waiver was denied. In 1988, however, Kokayi was offered the opportunity to participate in the Special Repayment Program ("SRP"), which had been authorized by § 204 of Public Law 100–177, 101 Stat. 1000 (1987). Kokayi elected to participate in the SRP and signed a contract in which he agreed to "match to a site on the 1989 [Supplemental Health Manpower Shortage Area Placement Opportunity List ] by February 15, 1989, and begin service ... at that site by October 1, 1989." Thereafter, Kokayi sought to have his then-employer Kings County Hospital Center designated and approved as a SHPOL site. The NHSC declined this request. Kokayi did not match to a site by the May 15, 1989 deadline, and did not accept a subsequent offer to serve pursuant to a forbearance agreement. This action was commenced on June 18, 1993. These motions followed.

## DISCUSSION

■ The NHSC Scholarship Program is intended "to improve the delivery of medical services in health manpower shortage areas." *Rendleman v. Bowen (Rendleman I)*, 860 F.2d 1537, 1541 (9th Cir.1988). "The program is not intended 'as a mechanism solely to subsidize health professional education,' but 'as a means to overcome a geographic maldistribution of health professionals.'" *Id.* (quoting S.Rep. No. 94–887, 94th Cong., 1st Sess. 201 (1975)). Courts considering the issue have held that the Secretary of HHS ("Secretary") has virtually unlimited discretion in determining how to administer the program, including the assignment of physicians to specific sites on the HPOL. *See Rendleman v. Shalala (Rendleman II)*, 21 F.3d 957, 963 (9th Cir.1994); *United States v. Arron*, 954 F.2d 249, 252 (5th Cir.1992).

Preliminarily, the standard for reviewing a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is well-established. A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986). The burden is upon the moving party to show that no genuine issue of material fact exists, and all ambiguities must be resolved, and all inferences drawn, in favor of the nonmoving party. *See Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir.1994). The Court's role in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The United States has produced ample documentary evidence supporting its claim that Kokayi is in default of his service obligations and has failed to repay his scholarship funds. Indeed, Kokayi does not contest that he has defaulted in his repayment obligations. His primary argument in opposition to the United States's motion is that this action is time-barred. The six-year statute of limitations applicable to contract actions has been held to apply to actions based on a default in obligations imposed by an NHSC contract. 28 U.S.C. § 2415(a); *see United States v. Bloom*, 112 F.3d 200, 204 (5th Cir. 1997); *United States v. Westerband–Garcia*, 35 F.3d 418, 420–422 (9th Cir.1994); *United States v. Maldonado*, 867 F.Supp. 1184, 1190 (S.D.N.Y.1994). Kokayi's contract provided that money damages based upon his failure to serve were to be paid "within one year of the date the Secretary determines that the applicant has failed to begin or complete the period of obligated service." This provision is based upon 42 U.S.C. § 254o(b)(1)(B)(i), which states, in pertinent part, that "[a]ny amount of damages that the United States is entitled to recover under this subsection ... shall, within the 1–year period beginning on the date of the breach of the written contract (or such longer period beginning on such

date as specified by the Secretary), be paid to the United States." Courts considering this issue have held that the United States's right of action for recovery of the debt does not accrue until this one-year grace period has expired. *See Maldonado*, 867 F.Supp. at 1191. In this case, Kokayi defaulted on his service obligation as of July 1, 1985. Thus, the United States's cause of action accrued on July 1, 1986, when Kokayi's payment became due. As this action was not commenced until June 18, 1993, this action is clearly time-barred, absent some tolling of the statute of limitations.

The United States argues that the statute of limitations was tolled for a period of approximately fourteen months, from March 29, 1988 until May 15, 1989, and that its action is therefore timely. The relevant statutory provisions are contained at Pub.L. No. 100–177, 101 Stat. 1000, §§ 204(a)(3) and 204(a)(4) (1987), which were enacted as part of the SRP. Section 204(a)(3) provides that an individual who is notified by the Secretary of HHS that he or she may participate in the SRP "may notify the Secretary that the individual intends to enter into a written contract with the Secretary to provide service" to the NHSC. More significantly for purposes of this action, § 204(a)(4) provides that "[i]f an individual provides notice under paragraph (3), the statute of limitations established by section 2415 of title 28, United States Code, *shall be tolled from the time the Secretary receives such notice until such time as it is determined by the Secretary that such individual will not be relieved of liability to the United States under the Public Health Service Act as provided under this section"* (emphasis added).

■ In this case, Kokayi sent a letter to the Director of Health Services Scholarships ("Director") in which he stated that "I wish to participate in the Special Repayment Program for the Public Health/National Health Service Corps Scholarship Support I have received." Although undated, this letter was stamped received on March 29, 1988. It is the United States's position that this letter constituted notification pursuant to § 204(a)(3) and that the six-year statute of limitations was tolled as of that date. The

Court agrees. Although Kokayi argues that this letter was ambiguous in that it requested clarification of certain questions and indicated his belief that two provisions of the proposed contract required amendment, there is absolutely no indication in the letter that resolution of these issues was a pre-requisite to his participation in the SRP. Indeed, on May 26, 1988, Kokayi signed a contract enrolling in the SRP. Therefore, the Court concludes as a matter of law that the statute of limitations was tolled as of March 29, 1988.

■ Kokayi argues that even if the March 29 letter may be construed as tolling the statute of limitations, the toll lasted only until April 19, 1988, when Kokayi received a letter from the United States indicating that the amount of his debt was $183,026.67. This argument is similarly without merit. The statute clearly provides that the tolling period begins when the Secretary receives notice that the individual *intends to sign* a contract to participate in the SRP—not when the individual finally signs the contract—and ends when the Secretary determines that the individual will not be relieved of liability. Between the time that Kokayi indicated his intention to participate in the SRP in March and the formal acceptance of the contract in June, he was still technically in default of his service obligations. By providing that the tolling period begins on the date the Secretary receives notice that the individual intends to enter a contract, the statute clearly contemplates that the tolling period will include the time it takes for a formal agreement to be signed and approved. In light of this statutory language, the Court concludes that the mere fact that Kokayi received a letter reminding him of his default during this interim period cannot, without more, be construed as terminating the statutory toll.

■ The Court also agrees with the United States that the tolling period formally ended on May 15, 1989, the final deadline for Kokayi to match with an approved site under the SRP. On July 13, 1989, the Director sent Kokayi a letter in which he stated that Kokayi was no longer eligible to participate in the SRP because of his failure to match with an approved site by that deadline. As May 15 marked the end of Kokayi's participation

in the SRP, he was again in default of his service obligations as of that time and the toll was consequently lifted. Kokayi's conclusory argument that such a reading of the statute reveals that it violates the principle of the separation of powers is without merit. Accordingly, the Court concludes that the statute of limitations was tolled between March 29, 1988 and May 15, 1989 and that this action was therefore timely commenced.

In the alternative, Kokayi argues that the United States should be estopped from pursuing this action because its failure to permit him to serve out his NHSC obligation in Brooklyn was arbitrary and capricious. Kokayi argues that the Secretary's failure to waive repayment of the scholarship funds was also arbitrary and capricious. Taking first Kokayi's contention that the United States is estopped from going forward with this action, this argument is completely without merit. Despite the fact that it is well-established that the six-year contract statute of limitations applies to actions of this type, courts that have considered these cases have held that contractual defenses, including estoppel, cannot be raised in these actions because the business arrangement between the individual physicians and the NHSC, although memorialized in a contract, is a creature of statute, not of arm's-length negotiation. *See United States v. Vanhorn*, 20 F.3d 104, 110 (4th Cir.1994); *United States v. Becker*, 995 F.2d 779, 783 (7th Cir.1993); *Rendleman I*, 860 F.2d at 1541–1542. Additionally, even if this Court were to address the merits of Kokayi's estoppel claim, it is baseless. First, estoppel is rarely valid against the government. *Bloom*, 112 F.3d at 205. Second, in order to prove estoppel, Kokayi must demonstrate, among other things, the existence of intentional misconduct on the part of the NHSC. Id. at 206. In this task, he has utterly failed, as it is clear from an examination of the record that the NHSC has given Kokayi a host of opportunities to cure his default under the terms of his contract with the NHSC. For similar reasons, the Court also concludes that Kokayi's affirmative defense of laches is without merit.

Additionally, Kokayi has failed to show the existence of a question of fact with regard to the NHSC's failure to permit him to serve in his Brooklyn neighborhood. As noted above, the Secretary has essentially unrestricted discretion in administering the NHSC program. The Court agrees with the statement of the Court of Appeals for the Fourth Circuit in *United States v. Vanhorn:*

> While [defendant] may indeed have served an underserved population, in light of the needs and dictates of the NHSC program, we cannot give [him] relief from [his] debt to the United States. The NHSC program was established so that [HHS] could channel promising young medical students to areas of the country greatly in need of their services. The Secretary must be able to retain control over where the scholarship recipients serve or the program is meaningless. The recipients cannot unilaterally, without proper approval, decide where they wish to serve if the program is to be effective.

*Id.* at 114; *see also Rendleman II*, 21 F.3d at 963 ("The Secretary enjoys essentially uncircumscribed authority in assigning scholars to HMSAs [Health Manpower Shortage Areas].... It is neither arbitrary, capricious, nor manifestly contrary to the statute for the Secretary to decline to relinquish ... the task of prioritizing the needs of the many HMSAs" (internal quotation marks omitted)); *Becker*, 995 F.2d at 784 ("Congress ... gave HHS the power to decide what sites would appear on the HPOL and assign [defendant] to a site of its own choosing"); *United States v. Gary*, 963 F.2d 180, 184–185 (8th Cir.1992) ("There is nothing in the statute which provides a NHSC scholarship recipient the right to dictate to the Secretary where he will serve."). Based on the foregoing, the Court concludes that the NHSC did not act arbitrarily or capriciously in failing to permit Kokayi to serve out his obligation in Brooklyn.

Similarly, the Court concludes that the Secretary did not act arbitrarily and capriciously in rejecting Kokayi's request for a waiver. In deciding whether to grant a request for a waiver, the HHS must consider:

**876**

(1) The participant's present financial resources and obligations;

(2) The participant's estimated future financial resources and obligations; and

(3) The extent to which the participant has problems of a personal nature, such as physical or mental disability, terminal illness in the immediate family which so intrude on the participant's present and future ability to perform as to raise a presumption that the individual will be unable to perform the obligation incurred.

42 C.F.R. § 62.12(d). In this case, Kokayi premised his request for a waiver upon his involvement in a religious society based in Brooklyn and the hardship that his wife, who was involved at establishing an independent school system within the community, would experience if they were forced to move elsewhere. Kokayi also stressed the needs of the Bedford–Stuyvesant community which he served. However, it has been held that the regulation is exclusive and that HHS need not consider other factors in determining whether to grant a waiver. *See Rendleman II*, 21 F.3d at 961; *United States v. Williams*, 864 F.Supp. 305, 314 (E.D.N.Y. 1994). Kokayi's relocation unquestionably would have caused considerable inconvenience to his family and his practice and, depending upon the community to which he was assigned, could have resulted in his placement in a community that was culturally and socially quite distinct from his own. However well-founded those concerns may have been, the Court nonetheless concludes that they are not within the scope of 42 C.F.R. § 62.12(d), and that the agency accordingly did not err in refusing Kokayi's request for a waiver. In conclusion, the Court determines that the United States has established its entitlement to judgment as a matter of law and that Kokayi has not shown the existence of any questions of fact that would require a trial of this matter. However, the United States is not entitled to receive the ten percent statutory surcharge pursuant to 28 U.S.C. § 3011, as this action involves neither a pre-judgment nor post-judgment remedy. *See Maldonado*, 867 F.Supp. at 1199.

## CONCLUSION

For the reasons set forth above, the United States's motion for summary judgment is granted, and Kokayi's cross motion for summary judgment is denied. The United States shall have judgment in the principal amount of $82,218.00, the amount demanded in the complaint, plus interest thereon to be calculated by the Clerk of the Court in accordance with 42 U.S.C. § 254*o*(b)(1)(A) to the date judgment is entered, plus costs and disbursements to be taxed by the Clerk of the Court. The United States is directed to submit a proposed judgment, on notice to counsel for Kokayi and in accordance with the Declaration of Michael Darracott, within 30 days of the date of this Memorandum and Order.

**SO ORDERED.**